COMMONWEALTH of Pennsylvania,
Appellee,

v.

Daniel MEALS, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 7, 2002.

Filed Jan. 26, 2004.

James B. Rader, York, for appellant.

Christopher A. Ferro, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: STEVENS, LALLY–GREEN, and BECK, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Daniel Meals, appeals from the judgment of sentence entered on February 28, 2002, on the ground that the trial court erred in holding that Appellant is a sexually violent predator. We reverse the judgment of sentence in part and affirm in part.

¶ 2 The trial court found the following facts:

Two (2) separate Criminal Complaints were filed in these cases as follows:

1. In case 5375 C.A.2000, a Criminal Complaint was filed on September 22, 2000, charging the Defendant with Indecent Assault (Section 3126(a)(1), (4) and (8) of the Crimes Code), Criminal Attempt to Commit Aggravated Indecent Assault (Section 901/3125 of the Crimes Code) and Involuntary Deviate Sexual Intercourse (Section 3123(a)(3) and (7) of the Crimes Code). These charges stem from allegations that the Defendant sexually assaulted S.B., a female juvenile, during the period September to October 1999 when S.B. was thirteen (13) years of age.

2. In case 713 C.A.2001, a Criminal Complaint was filed on October 18, 2000, charging the Defendant with Involuntary Deviate Sexual Intercourse (Section 3123(a)(6) of the

Crimes Code), Aggravated Indecent Assault (Section 3125(7) of the Crimes Code), Indecent Assault (Section 3126(a)(7) of the Crimes Code) and Corruption of Minors (Section 6301(a) of the Crimes Code). These charges stem from allegations that the Defendant sexually assaulted L.N.S., a female juvenile, in August 2000 when L.N.S. was nine (9) years of age.

The Defendant (d.o.b. 6/29/67) was 32 to 33 years of age during the period of these alleged assaults.

The Defendant pled guilty to all offenses on October 29, 2001 pursuant to a plea bargained agreement, the terms of which were that he would receive a total aggregate sentence of six (6) to fourteen (14) years in a state correctional institution. As a result of some of these offenses being listed offenses under the Megans [Law] Statute, *SEE* Section 9795.1—Registration, the Defendant was directed to undergo that evaluation and a sentencing hearing was postponed until February 28, 2002. In the meantime, the District Attorney of York County petitioned the Court, requesting that the Defendant be declared a "sexually violent predator" pursuant to the Megans [Law] Statute.

On February 28, 2002, the Trial Court conducted a bifurcated proceeding, first conducting the hearing to inquire whether the Defendant should be classified as a sexually violent predator, which it did, and thereafter conducting the sentencing hearing. The sentence was imposed strictly in accordance with the plea agreement presented.

\* \* \*

At the hearing to consider the question of whether the Defendant should be classified as a sexually violent predator, the Commonwealth called as its sole witness, Gregory Loop, a member of the Sexual Offender Assessment Board and evaluator, who performed the assessment upon the Defendant. Mr. Loop has a Master's Degree in Counseling, with specialized training in the treatment and assessment of sexual offenders. He was designated a member of the Sexual Offender Assessment Board in September of 2000 and performed eighteen (18) assessments in his capacity as a Board member.

Mr. Loop testified that he performed his evaluation of the Defendant pursuant to the statutory scheme set forth in Section 9795.4 and in particular, noted that the Defendant offended against two (2) young female victims, who were thirteen (13) and nine (9) years of age at the time of the assaults and that these assaults took place approximately one year apart. Mr. Loop further testified that he considered the nature of the assaults which initially included improper touching and then progressed to digital penetration and eventually to oral to genital contact. Mr. Loop did recognize that there appeared to be no unusual cruelty or extreme measures undertaken by the Defendant to carry out the assaults, although there were reported threats made against the girls to induce them to submit to the assaults and not to report the assaults. According to Mr. Loop, the only prior record involving the Defendant was a reported Protection From Abuse action with a charge of Indirect Criminal Contempt as having violated the terms of the Protection From Abuse Order. There were no prior reported sexual assaults. Mr. Loop further testified that there was no reported use of drugs or alcohol as part of the assaultive process. Further, Mr. Loop noted that the Defendant had previously engaged

in drug and alcohol counseling through a local counseling agency.

Mr. Loop was of the opinion that the Defendant met the profile for the mental abnormality of pedophilia. Mr. Loop was of the further opinion that the Defendant's actions were predatory in nature in that he appeared to have formed and maintained relationships with the mother of the victim in order that he could maintain contact with and exploit the child sexually. Mr. Loop noted that the assaults were carried out when the mother was away from the home and were achieved by telling the child that he would harm the mother unless the child accepted the assaults. It was based on this analysis that Mr. Loop recommended that the Defendant be classified as a sexually violent predator. Concededly, Mr. Loop made his determination without input from or participation by the Defendant, but rather upon records assembled by the Board for his consideration.

The Defendant presented no evidence on the issue of "sexually violent predator" classification. Accordingly, the record was closed and the Court made its findings and determinations which are set forth at pages 39 through 46 of the record of transcript of February 28, 2002.

Trial Court Opinion, 5/1/02, at 2–4, 6–8 (footnote omitted).

¶ 3 Appellant raises a single issue for our review:

Whether the lower court erred in classifying the Appellant a sexually violent predator where the Commonwealth failed to prove by clear and convincing evidence that the Appellant is a sexually violent predator pursuant to 42 Pa. C.S.A. § 9794.5, where the Commonwealth presented insufficient evidence at the hearing to determine whether the lower court should classify the Appellant a sexually violent predator?

Brief for Appellant at 4.

¶ 4 In *Commonwealth v. Krouse*, 799 A.2d 835 (Pa.Super.2002) (*en banc*), this Court discussed in great detail the scope and standard of review of a challenge of the sufficiency of the evidence supporting a trial court's determination of sexually violent predator (SVP) status.[1] A challenge to the sufficiency of the evidence is a question of law requiring plenary review. *Id.* at 837 (*citing Commonwealth v. Weston*, 561 Pa. 199, 749 A.2d 458, 460 n. 8 (2000)). We must review the evidence to determine "whether the evidence admitted at trial and all reasonable inferences drawn there from, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses." *Id.* at 837–38 (*quoting Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394, 398 (2001)). The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. *Id.*

---

1. We note that the trial court sentenced Appellant under Megan's Law II. The prior version of Megan's Law (Megan's Law I) required that the defendant rebut a presumption of sexually violent predator status by clear and convincing evidence. Our Supreme Court, in *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999) ruled that the presumption against the defendant was unconstitutional. As a result, the legislature enacted Megan's Law II, which places on the Commonwealth the burden of proving by clear and convincing evidence that the defendant is a sexually violent predator. We note that our Supreme Court has recently upheld the constitutionality of Megan's Law II. *Commonwealth v. Williams*, 832 A.2d 962 (2003) (*Williams II*); See also, *Commonwealth v. Haughwout*, 2003 PA Super. 427, 837 A.2d 480 (2003). *Williams II* does not affect the outcome of this case.

¶ 5 In this case, the Commonwealth bears the burden of proving through clear and convincing evidence that Appellant meets the statutory definition of SVP. *Commonwealth v. Maldonado*, —— Pa. ——, 838 A.2d. 710 (2003). The definition is as follows:

"Sexually violent predator." A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792.

¶ 6 Section 9795.4 includes a detailed but non-exclusive list of factors that the person making the assessment must consider:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b). Our Supreme Court, noting that the foregoing statutory provisions require a subjective determination of an offender's future dangerousness, has cautioned us that the risk of error in subjective determinations is greater than for objective ones. *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593, 607 (1999). Moreover, we must be mindful that the offender's "livelihood, domestic tranquility and personal relationships are unquestionably put in jeopardy by the notification provisions." *Id.*

¶ 7 The *Krouse* court held that the Commonwealth failed to meet its burden of proof. In that case, the Commonwealth's expert concluded that the defendant had a personality disorder and that he was likely to engage in sexually violent offenses in the future. The expert based his assessment on published studies finding that persons who had engaged in conduct similar to that of the defendant are likely to repeat it. *Krouse*, 799 A.2d at 840–41.

¶ 8 The *Krouse* court concluded that the expert's finding of a personality disorder was flawed because the expert had assumed certain facts that were not established in evidence. In addition, the Court

noted that the expert did not meet with the defendant, and that the defense expert's diagnostic tests did not indicate the presence of a personality disorder. *Id.* Likewise, the Court concluded that the evidence of record did not support the expert's conclusion that the defendant had engaged in "grooming behavior." [2] *Id.*

¶ 9 In addition to the lack of evidentiary support for the expert's findings, the Court noted that some of the statutory factors weighed against finding the defendant to be an SVP. In particular, the offense did not involve multiple victims, it did not involve force or cruelty, it was the defendant's first sexual offense, the offense did not involve alcohol or illicit drugs, and there was no evidence in the record of prior mental health problems or deviant sexual behavior. *Id.* at 842.

¶ 10 The *Krouse* court also recommended that trial courts make specific findings as to the necessary elements of an SVP determination. *Id.* The trial court in the instant matter has done so:

Under the assessment process, the factors to be considered are the following:

Whether the offense involved singular or multiple victims. Here there are two.

Whether the offender exceeded the means necessary to achieve the offense. Again, it's indicated he did not.

We're nextly [sic] to consider the nature of the sexual contact with the victims. Here, with regard to both victims and during the same time frames, it was indicated there were multiple contacts with these children, including digital penetration or attempts at that and oral genital contact upon the victims.

We are also to consider the relationship with the victims. Again, as described, the Defendant was in a relationship at some level with the mother of the children.

The age of the victims, their tender years, thirteen and nine years respectively.

We're also to consider whether the offenses as carried out included a display of unusual cruelty during commission of the crimes, and as Mr. Loop indicated, no such particular unusual cruelty was involved.

We're also to consider the mental capacity of the victims, and in that regard, there is nothing reported, so we conclude that the young girls were of average, at least average mental capacity during the time frame of the assaults.

We're also to consider the past prior criminal history of the Defendant. Nothing significant there except as may have arisen from a PFA, but the Court's experience with those proceedings are [sic] that they are often entered into without any particular acknowledgement of wrongdoing, but rather to conclude those proceedings, so we take no particular inference from that issue adverse to the Defendant.

Next we are to consider whether the Defendant completed any prior sentences. There is nothing reported in that regard.

Next, whether the Defendant participated in any available programs for sexual offenders. There is nothing reported on that, and indeed no past type or similar offenses.

We're also to consider individual characteristics of the Defendant, including

---

**2.** Grooming behavior involves establishing a relationship with a child with the ultimate purpose of sexually exploiting the child.

his age. He was thirty-three to thirty-four at the time of the events.

His use of illegal drugs or substance. It is reported that he has engaged in the use of both alcohol and marijuana usage, [sic] but not used during the time frame of these assaults.

Next, any mental illness, mental disability or mental abnormality. The only thing we have in that regard is Mr. Loop's indication that the Defendant likely meets the profile for pedophilia.

Finally, any other behavioral characteristics contributing to this conduct, and there's nothing reported in that regard.

We conclude on the basis of the records as presented that the Defendant should be and we do classify him as a sexually violent predator based upon the foregoing determinations that the Defendant meets the criteria for pedophilia, given the multiple assaults on these two young girls, and in the context and setting in which they were carried out, that he did so in a predatory fashion based upon at least one of the girls being unconscious, asleep during part or portions of the assaults, and that he at least in part maintained a relationship and continued it, noting mother's absence from the home at the time in order to continue to sexually exploit and use the two children.

N.T., 2/28/02, at 43–46.

¶ 11 In the instant matter, the Commonwealth's case suffers from many of the same deficiencies that this Court specified in *Krouse*. First, it is clear from the trial court's findings that many of the § 9795.4 factors weigh against SVP status. For example, the trial court found that Appellant has no history of committing sexual offenses, and that Appellant was not unusually cruel and did not exceed the means necessary to commit the offenses to which

he pled guilty. Also, the trial court found that Appellant was not under the influence of drugs or alcohol at the time of the offenses.

¶ 12 Likewise, Mr. Loop's diagnosis of pedophilia is based on his knowledge of the facts of record and his knowledge of published studies of pedophilia. On direct examination, Mr. Loop described the basis for his conclusion that Appellant is a pedophile:

Q. Mr. Loop, during the course of your evaluation of Mr. Meals, did any of the facts available to you lead you to the belief that this Defendant had any mental illness or mental abnormalities?

A. Based on the behavior that was reported over time, that behavior being the sexual engagement of children, it appeared that he would present in a similar manner as those diagnosed with pedophilia.

N.T., 2/28/02, at 18.

¶ 13 On cross examination, Mr. Loop testified regarding the likelihood of pedophiles to engage in predatory sexually violent offenses:

A. In this particular case, one of the factors that I could tell you from memory is pedophilia, because pedophilia is highly related to a risk to reoffend.

Q. Is pedophilia treatable?

A. There are a number of current treatments that are extant in the field, both from a behavioral and a pharmacological standpoint.

Q. So if you can treat a person diagnosed with the illness of pedophilia, that would lessen the chance of them engaging in predatory behavior?

A. Successful completion of treatment would lessen the risk for that person, but would not necessarily make them less at risk than the general population,

which is why they're at greater risk to reoffend.

N.T., 2/28/02, at 23. Mr. Loop also conceded that his diagnosis was based on limited information. *Id.*

¶ 14 In light of the foregoing, the record fails to reflect that the Commonwealth has proven by clear and convincing evidence that Appellant suffers from "a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa. C.S.A. § 9792. Mr. Loop's diagnosis of pedophilia seems based entirely on the age of the victims. As this Court has noted, SVP status does not automatically apply to persons who commit sexual offenses against children. *Krouse*, 799 A.2d at 842. Indeed, were it otherwise, the offender would be subject to a presumption of SVP status. Our Supreme Court has held that such a presumption is unconstitutional. *Williams.* Moreover, as we explained *supra* at ——, many of the § 9795.4 factors weigh against SVP status in this case. The Commonwealth has failed to meet its burden of proof as set forth in *Krouse*.

¶ 15 We appreciate the difficulties that may arise from an offender's refusal to meet with the person who conducts the SVP assessment. Nonetheless, such difficulties do not excuse the Commonwealth from meeting its burden of proof. As this Court noted in *Krouse:*

> Our conclusion in this case should not suggest that the elements of an SVP designation cannot be met, nor do we even suggest that the elements could not be met in situations where the defendant exercises his or her right to refuse personal evaluation by the Assessment Board. We are cognizant, however, of the fact that the SVP classification does not automatically apply to an individual convicted of a sexual offense or even to individuals who have molested a child.

*Krouse*, 799 A.2d at 842. Because the Commonwealth did not prove by clear and convincing evidence that Appellant is a sexually violent predator, we are constrained to reverse the trial court's judgment of sentence in that regard. *Krouse.*

¶ 16 Judgment of sentence reversed in regard to the sexually violent predator determination; otherwise, judgment of sentence affirmed. Jurisdiction relinquished.

¶ 17 STEVENS, J. notes his dissent.