COMMONWEALTH of Pennsylvania,
Appellee,

v.

Christopher Anthony DIXON,
Appellant.

Superior Court of Pennsylvania.

Submitted May 15, 2006.
Filed Aug. 16, 2006.
Reargument Denied Oct. 17, 2006.

**534**

James J. Karl, Lancaster, for appellant.

Todd P. Kriner, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: DEL SOLE, P.J.E., HUDOCK, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Christopher Anthony Dixon, appeals from the judgment of sentence imposed following his guilty plea to charges of aggravated indecent assault, in-

decent assault, corruption of minors, and terroristic threats.[1]  Specifically, Appellant asks us to determine whether the trial court erred when it classified him as a Sexually Violent Predator ("SVP") under 42 Pa.C.S.A. §§ 9791–99.9, also known as Megan's Law II.  Upon review of the record and applicable law, we hold that the evidence was sufficient to support the classification.  Accordingly, we affirm.

¶ 2 The relevant facts and procedural history underlying this appeal, as gleaned from the certified record, the trial court opinion, and the parties' briefs, are as follows.  In the summer of 2002, Appellant sexually assaulted the two young daughters of his wife's best friend.  The girls, ages 10 and 13 at the time of the assaults, told police that Appellant fondled their breasts and genitals.  Appellant also digitally penetrated the 13–year–old child's vagina.  Appellant committed the acts on three occasions with one child, and on one occasion with the other.  He threatened to kill both girls if they revealed the assaults to anyone.

¶ 3 During the criminal investigation that followed, Appellant admitted to the conduct and, later, pled guilty to the charges set forth above.  Following the guilty plea, the trial court refused the Commonwealth's request to schedule an assessment hearing on Appellant's SVP status.  Instead, the court imposed an aggregate sentence of 4 to 8 years in prison and directed Appellant to submit to those provisions of Megan's Law II that did not address SVP offenders.  The Commonwealth's appeal on the issue of SVP status resulted in a remand directing that an assessment hearing be held.[2]  *Common-*

---

1.  Respectively, 18 Pa.C.S.A. § 3125(a)(8); 18 Pa.C.S.A. § 3126(a)(7) & (8); 18 Pa.C.S.A. § 6301(a)(1); and 18 Pa.C.S.A. § 2706(a)(1).

2.  The trial court's initial refusal to hold the hearing was based on rulings in various trial courts throughout the Commonwealth which had held that Megan's Law assessment hearings were unconstitutional;  those cases have

*wealth v. Dixon,* 578 Pa. 569, 854 A.2d 478 (2004).

¶ 4 The SVP hearing was held on November 30, 2005. The single witness for the Commonwealth was Robert Stein, Ph. D., a licensed psychologist and a member of the Pennsylvania Sexual Offender Assessment Board ("SOAB" or "the Board"), who was qualified by the court as an expert in sexual offender assessments. Dr. Stein opined that Appellant suffered from "paraphilia, not otherwise specified" ("paraphilia NOS") and that, under the statutory standards, he met the criteria for an SVP. The expert based his opinion on his interview with Appellant, as well as on his review of police reports pertaining to the current offenses, police reports pertaining to Appellant's prior sexual crimes in 1983 and 1984, Department of Corrections reports, and a 1990 psychological report.

■ ¶ 5 Appellant did not present any witnesses at the assessment hearing, but his attorney zealously cross-examined Dr. Stein and argued to the court that the evidence presented was insufficient to support the expert's opinion. The trial court determined that the Commonwealth had met its burden, and so found that Appellant was subject to the reporting requirements for SVPs under the statute. Appellant filed a timely appeal and now raises a single issue for our review:

> Did not the Commonwealth fail to prove [Appellant's] status as a "sexually violent predator" when the Commonwealth's expert did not undergo [sic] an independent risk assessment as to the likelihood of reoffense[sic] and, instead, concluded that all persons who commit a 'predatory' act and who are diagnosed with 'paraphilia (not otherwise speci-

fied),' *ipso facto,* are sexually violent predators?

(Appellant's Brief at 4).

■ ¶ 6 In examining a trial court's determination that SVP status is appropriate, our scope of review is plenary, *Commonwealth v. Krouse,* 799 A.2d 835, 837 (Pa.Super.2002) *(en banc),* and our standard of review is as follows:

> [W]e will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied. The evidence must be viewed in the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Commonwealth v. Plucinski,* 868 A.2d 20, 25 (Pa.Super.2005) (citations and quotations omitted).

¶ 7 The process of determining SVP status is statutorily-mandated and well-defined. The triggering event is a conviction for one or more offenses specified in 42 Pa.C.S.A. § 9795.1, which, in turn, prompts the trial court to order an SVP assessment by the SOAB. The Board's administrative officer then assigns the matter to one of the Board's members, all of whom are "expert[s] in the field of the behavior and treatment of sexual offenders." 42 Pa.C.S.A. § 9799.3. At the core of the expert's assessment is a detailed list of factors, which are mandatory and are designed as "criteria by which . . . [the]

been reversed by our Supreme Court. *See Commonwealth v. Maldonado,* 576 Pa. 101,

838 A.2d 710 (2003); *Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962 (2003).

likelihood [of reoffense] may be gauged." *Commonwealth v. Bey,* 841 A.2d 562, 566 (Pa.Super.2004). They include:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).

■ ¶ 8 The specific question for the SOAB expert, as well as any other expert who testifies at an SVP hearing, is whether the defendant satisfied the definition of sexually violent predator set out in the statute, that is, whether he or she suffers from "a mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792. At the hearing on SVP status, the expert's opinion is presented to the trial court judge, who alone determines whether the Commonwealth has proved by clear and convincing evidence that the defendant is a sexually violent predator. *Krouse, supra* at 839. This Court has determined that the "salient inquiry" for the trial court is the "identification of the impetus behind the commission of the crime," coupled with the "extent to which the offender is likely to reoffend." *Bey, supra* at 566.

¶ 9 Significant in the instant appeal is the nature of an expert's assessment, or, more specifically, the elements that an expert is required to consider before he or she can render an opinion on whether the defendant is an SVP. Appellant alleges that "the definition of SVP contains three elements: (1) mental abnormality; (2) 'predatory' act; and (3) an independent assessment, using the factors set forth at 42 Pa.C.S. § 9795.4(b), that there is a likelihood of reoffense." (Appellant's Brief at 13). According to Appellant, Dr. Stein did not satisfy the third element because he failed to engage in an independent assessment of Appellant's likelihood of reoffending, instead concluding that "anyone who has the diagnosis of paraphilia (not otherwise specified)[,] and who commits a 'predatory' act, *ipso facto,* is 'likely' to reoffend for purposes of the statutory definition."

(Appellant's Brief at 13). The Commonwealth counters that Dr. Stein's testimony and report, when considered in their entirety, were sufficient to satisfy the statutory requirements, and as such, amply support the trial court's finding that Appellant is an SVP. (Commonwealth's Brief at 6). We agree with the Commonwealth.

¶ 10 Our research has not revealed, and Appellant does not proffer, a single case in which this Court or our Supreme Court has set out the SVP standard in terms of three distinct elements.[3] Typically, the cases recite the standard simply by tracking the statutory language, which provides that an individual is an SVP if he or she suffers from "a mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792. Appellant is correct that this Court has rejected a trial court finding of SVP status where the SOAB expert's testimony did not "clearly and convincingly prove the element of likely to engage in predatory sexually violent offenses." *See Krouse, supra* at 840. Further, this Court has not hesitated to reverse an SVP finding if an analysis on "the likelihood of reoffense" is absent from the record. *Plucinski, supra* at 27.

¶ 11 In the matter *sub judice,* Dr. Stein testified that Appellant suffers from paraphilia NOS, which means that Appellant has sexual urges involving children or other non-consenting persons. (Notes of Testimony ("N.T."), 11/30/05, at 24). Dr. Stein's opinion was based in part on Appellant's criminal history, which included prior convictions for the sexual assault of a 14-year-old girl in 1983 and the rape of a woman in 1984. The expert noted that Appellant had been incarcerated for those offenses, and nearly ten years had passed between the time of his release from prison and the dates of the sexual assaults in the instant case. Dr. Stein testified that despite the gap in time between Appellant's prison release and the current charges, he believed that Appellant's entire sexually violent history made the diagnosis appropriate.

¶ 12 Appellant does not challenge the fact of Dr. Stein's paraphilia NOS diagnosis. Appellant claims, however, that Dr. Stein improperly relied on the diagnosis as the sole support for his opinion that Appellant was likely to reoffend, thus placing Appellant in the category of an SVP without engaging in an independent assessment of his particular tendency to reoffend. Upon review of the entire record, we cannot agree with Appellant that Dr. Stein's ultimate opinion regarding Appellant's SVP status rested solely on the diagnosis of a mental abnormality.

¶ 13 The transcript from the assessment hearing reflects that Dr. Stein testified at length regarding the statutory factors set out in Section 9795.4(b). The expert recited each factor, described its application in Appellant's case, and noted whether it militated in favor of or against a finding of SVP status. Many of the factors worked against Appellant's interest, such as the number of victims, the nature of the contact (penetration), the age of the victims, Appellant's significant criminal history, Appellant's history of alcohol abuse, and Appellant's use of a shotgun to threaten one of the victims. Other factors, such as

---

**3.** In *Commonwealth v. Shugars,* 895 A.2d 1270 (Pa.Super.2006), the Court described the SVP inquiry as having *"two parts:* first, the person must have been convicted of a sexually violent offense, and second, the person must be determined to be a sexually violent predator due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." *Id.* at 1276 (citations omitted) (emphasis supplied).

the absence of unusual cruelty and the normal mental capacity of the victims, worked in Appellant's favor.

¶ 14 The transcript reveals that prior to offering his expert opinion, Dr. Stein was thorough and meticulous in his explanations of the factors, as well as in his description of Appellant's mental abnormality. The expert explained that his consideration of the factors, coupled with Appellant's paraphilia NOS and the nature of his conduct, led the expert to conclude that Appellant is "predispose[d]" to the "commission of sexual offenses." (N.T. at 18). When asked to clarify this statement, Dr. Stein confirmed that his use of the term "predisposed" meant "likely to re-offend." *(Id.)*

¶ 15 Appellant draws our attention to a number of references in the hearing transcript wherein Dr. Stein spoke in terms of only two considerations in his assessment, namely, mental abnormality and predatory behavior. From these references, Appellant posits that the expert's assessment lacked an inquiry into likelihood of reoffense. We do not agree.

¶ 16 The record makes clear the fact that Dr. Stein was "adamant" in stating that his report was not a "formal risk assessment" *(id.* at 38), and that he was not purporting to predict "a specific time frame as to when [Appellant was] going to offend again." *(Id.* at 18–19). Nonetheless, the expert explained that the report necessarily included an "element" of risk assessment and, further, that Appellant was at a "high risk to offend in the future." *(Id.* at 49–50). Thus, contrary to Appellant's claims, Dr. Stein's conclusions with

regard to the likelihood of reoffense did not rest solely on the existence of Appellant's mental abnormality. Also significant, according to the expert, was Appellant's prior history of sexual offenses, the consideration of which is mandated by Section 9795.4(b)(2).[4]

¶ 17 In support of his claim that Dr. Stein's assessment was conclusory or incomplete, Appellant relies on our holdings in a variety of cases in which we reversed a finding of SVP status. However, none of the cases Appellant cites is similar to this one and none warrants reversal.

¶ 18 In *Krouse, supra,* an *en banc* panel of this Court held that the Commonwealth had failed to "clearly and convincingly prove the element of 'likely to engage in predatory sexually violent offenses.'" *Krouse,* 799 A.2d at 840. The *Krouse* court was troubled by the fact that the SOAB expert in that case had not interviewed the appellant and, further, the expert "repeatedly noted the imperfect science of predicting the likelihood of reoffense." *Id.* Noting that the expert's opinion was based only on published studies regarding recidivism, coupled with weak evidence that the appellant fit the profile discussed in the studies, the Court concluded that the expert's testimony did not support the finding that the appellant was likely to reoffend. *Id.*

¶ 19 In the instant case, Dr. Stein did not have to rely on published studies to make observations about Appellant because the expert interviewed Appellant personally. Further, the evidence in support of the expert's opinion that Appellant

---

**4.** We recognize that Dr. Stein also relied on Appellant's prior convictions for sexual assault and rape in order to make his diagnosis of paraphilia NOS. It is logical—indeed, appropriate—that some of the statutory factors formulated by the legislature to determine the likelihood of reoffense also would be relevant in diagnosing a mental abnormality that, as Dr. Stein explained, is characterized by *"sexual urges* [or behavior] involving ... children or other non-consenting persons." (N.T. at 24) (emphasis supplied).

had a tendency to reoffend could not be characterized as weak. It was based, in part, on Appellant's two prior convictions for sexual offenses and on the fact that despite being caught and convicted of those offenses, and serving time in prison, Appellant nonetheless committed the instant crimes. In light of these material differences, *Krouse* does not control this case.

¶ 20 Appellant also relies on our rationale in *Plucinski, supra* and *Commonwealth v. Meals,* 842 A.2d 448 (Pa.Super.2004), *appeal granted,* 583 Pa. 661, 875 A.2d 1074 (2005), both of which resulted in the reversal of SVP status on appeal. However, neither case militates in favor of granting Appellant relief. In *Plucinski,* the panel concluded that the expert's own testimony called into question his diagnosis as to mental abnormality and, further, that "numerous statutory factors necessary to support an SVP classification [were] absent." *Plucinski* at 27. In *Meals,* the panel held that there was a lack of factual support for the mental abnormality diagnosis and that "many of the [statutory] factors weigh[ed] against SVP status." *Meals* at 454. Here, Appellant does not even challenge the mental abnormality diagnosis. Moreover, Dr. Stein testified to a number of statutory factors that supported Appellant's SVP classification, a fact that was not disputed at the assessment hearing and which Appellant does not now dispute. The case law upon which Appel-

lant relies simply does not afford him relief.

¶ 21 We agree with Appellant that every Commonwealth expert who testifies that an individual is an SVP must examine, and render an opinion on, whether the individual is likely to re-offend. *See Krouse, supra.* Contrary to Appellant's claims, the precise manner of meeting this burden is not analyzed in terms of a strict, three-prong test. Nonetheless, the Commonwealth must prove by clear and convincing evidence that the statutory definition has been satisfied, and that definition certainly includes an inquiry into the likelihood of reoffense. 42 Pa.C.S.A. § 9792.

¶ 22 Upon review of the entire record, we determine that the expert's testimony in this case amply demonstrated that Appellant suffers from "a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792. Thus, we conclude that the trial court did not abuse its discretion when it found that Appellant was a sexually violent predator.[5] Accordingly, we affirm the judgment of sentence.

¶ 23 Judgment of sentence affirmed.

**5.** Appellant's Statement of Questions Involved raises a single issue, to wit, whether the expert's testimony in this case was sufficient, where it failed to include an independent assessment of the likelihood of reoffense, and instead relied solely on the diagnosis of a mental abnormality and the existence of predatory behavior. (Appellant's Brief at 4). Further, in the body of his brief, Appellant explicitly states: "[Appellant] *is not contesting* the sufficiency of the evidence as to the 'predato-

ry' element...." (Appellant's Brief at 15 n. 3) (emphasis supplied). Nonetheless, at the end of his argument section, Appellant includes a claim that his "actions were not predatory under the Megan's Law II definition." (Appellant's Brief at 22). This argument is waived because Appellant failed to include it in his Statement of Questions Involved. *Commonwealth v. Hood,* 872 A.2d 175, 184 n. 6 (Pa.Super.2005) (citing Pa. R.A.P. 2116(a)).