J-A18025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDWARD E. WRIGHT | : | |
| | : | |
| Appellant | : | No. 988 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 22, 2021
In the Court of Common Pleas of McKean County
Criminal Division at CP-42-CR-0000204-2020

BEFORE:  STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: SEPTEMBER 7, 2022**

Edward E. Wright (Appellant) appeals from the judgment of sentence imposed after he pled guilty to indecent assault (without consent), indecent assault (complainant less than 16), and corruption of minors.[1]  We affirm.

The trial court summarized the case history as follows:

> A.A. … began working at Wright's Music Shed, which is owned by [Appellant], [in 2017,] when she was 14.  She considered [Appellant] as "somewhat of a mentor."  When she was 15 and still working at Wright's Music Shed[, Appellant] began complimenting her, including calling her "beautiful."  He then began touching and massaging her.  This led to him touching, or as [A.A.] described it, "cupping," her breasts.  He also "rubbed" her inner thigh.  This behavior took place in a secluded upstairs office.  [Appellant] told A.A. that he wanted to have a relationship with her when she turned 18.  At the time [Appellant] committed these offense[s,] he was 66 or 67 years old.

---

[1] 18 Pa.C.S.A. §§ 3126(a)(1) and (8), and 6301.

[Appellant] was previously convicted at McKean County Docket [] 128 CR 1986 of: three (3) counts of corruption of minors, 18 Pa.C.S. § 6301; three (3) counts of indecent exposure, 18 Pa.C.S. § 3127; and four (4) counts of indecent assault, 18 Pa.C.S. § 3126.  At the time the Appellant committed these prior offenses, he was a band director at the Bradford Area High School.  His responsibilities as a band director included instructing and supervising male and female teenage students.  He formed relationships with several of his female students and thereafter sexually assaulted them.  There were three teenage victims at 128 CR 1986, with separate incidents of sexual assault, indecent exposure and corruption of minors involving each of them.

Trial Court Opinion, 10/11/21, at 3-4.[2]

Appellant entered his guilty plea on January 7, 2021.  That same day, the trial court ordered Appellant to undergo an assessment as to whether he met the statutory requirements for classification as a sexually violent predator (SVP).

The trial court held an SVP hearing on July 11, 2021.  Gregory A. Henry, Esquire (Trial Counsel), appeared on Appellant's behalf.  The Commonwealth presented testimony from (1) the investigator assigned to Appellant's case, an agent of Pennsylvania's Sexual Offenders Assessment Board (SOAB); and (2) Appellant's SOAB evaluator, Brenda Manno, MSW, LCSW (Ms. Manno).  The court qualified Ms. Manno as an expert in the field of sex offender assessment without objection by Appellant.  N.T., 7/11/21, at 18.

---

[2] Appellant also committed sex offenses against a fourth minor female in the 1980s.

Ms. Manno testified that she evaluated Appellant and made findings with respect to each of the SVP assessment factors set forth at 42 Pa.C.S.A. § 9799.24(b)(1)-(4). **See** N.T., 7/11/21, at 18-28. She opined that Appellant "met the diagnostic criteria for unspecified paraphilic disorder as is found in the DSM-5."[3] **Id.** at 28-29; **see also id.** at 25 ("[I]n the DSM-5, paraphilia involves intense thoughts, fantasies or behaviors spanning at least a six-month period."). Ms. Manno further testified that Appellant posed a risk for reoffending:

> [H]aving the paraphilic diagnosis indicat[es] we do have an established pattern of sexually deviant behavior with children, that increases [Appellant's] likelihood of offending versus other offenders who do not have such diagnoses.

**Id.** at 28. Noting the significant age difference between Appellant and A.A., Ms. Manno stated, "recidivism tends to decline with age, [but Appellant] clearly recidivated even after he was over 60 years of age." **Id.** at 23; **see also id.** at 39-42, 44-47 (Trial Counsel cross-examining Ms. Manno about recidivism and elderly offenders). Ms. Manno concluded Appellant "does meet the criteria to be deemed a sexually violent predator under statute." **Id.** at 30.

A dispute arose with respect to the qualification of Appellant's expert, Robert Maiden, Ph.D. (Dr. Maiden), a licensed clinical psychologist and

---

[3] The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) is a widely used manual for psychiatric diagnosis. **See**, **e.g.**, **Commonwealth v. Woeber**, 174 A.3d 1096, 1107 n.11 (Pa. Super. 2017).

professor at Alfred University in New York. *Id.* at 53. The trial court issued a "split decision," **qualifying Dr. Maiden as an expert as to whether an individual has "unspecified paraphilic disorder," but not as to whether an individual is an SVP**. *Id.* at 70-71.

As we discuss in greater detail below, Dr. Maiden testified that Appellant did not meet the diagnostic criteria for "unspecified paraphilic disorder." *Id.* at 74-75; *see also id.* at 79-80. In particular, Dr. Maiden opined that Appellant did not exhibit the requisite "irresistible urge" symptoms. *See id.* at 74-75.

The trial court found the Commonwealth proved that Appellant met the requirements for classification as an SVP. *Id.* at 120. The court explained its reasoning as follows:

> Each side has really had me thinking today. And a big reason for that is we have two good professionals in their field provide different opinions. And it's difficult because they both have good qualifications[.] …
>
> So it comes down to [] whose opinion should the court accept … from these two veteran, qualified individuals. … And it comes down to a couple points that I'm going to outline.
>
> First, **it was appropriate** … [**for**] **the defense to emphasize that the rate of recidivism goes down with age.** That was brought up through the direct testimony of expert [Ms.] Manno. And she provided those numbers. They're in the record. They're … very low. … Almost … down to zero. But not zero. So … that's a factor here because I have to decide does [Appellant] have unspecified paraphilic disorder, and will he re-offend.
>
> ….

[A]ge is a relevant factor here[.] … **There's no dispute about it, that the likelihood of re-offending goes way down with age**. The studies show, as was said several times here.

….

[**Appellant is**] **66 and he committed the offense**[**s**]. **So to get into the statistics, the statistics say that's unlikely for him to have … done that. But he did.**

….

I will accept that [Appellant] will be into his 70s, or close to it when his period of confinement is done. But if he's this age and he offended, the statistics from the general group don't have a lot of meaning because if he's 66, when he's 75 or 72 or whatever, is there a lot of difference between when he was 66[?] … So **the reference to studies and the low numbers of re-offending doesn't have a lot of bearing as it would if** [Appellant] **was 30 because considering his age now, it's difficult to apply the statistical analysis here**. …

….

And one thing that I really struggled with [is] how I should [] analyze the assertion that well, in 1986 there were several victims. And now we're 30 years out and [until this case] there's no other victims. Now, [**Dr. Maiden made**] … **reference to there's no other reports**. And then I really struggled with that. Well, that's true, there are no other reports. [Appellant] wasn't convicted of any offenses since … 1986. And the court certainly can't consider something that isn't in the record. **So there's no reports. That's a factor.** I agree it is. But then [Dr. Maiden] even went further. [] Dr. Maiden went way out on that and said well, … in today's world with the internet and everything, we'd know. [W]e'd know if there w[ere] other victims. And I reject that assertion completely. There are many victims who do not come forward for a variety of reasons.

….

**So I can't find here that there were other victims. But I certainly can't find that I have to 100 percent conclude there weren't because no one else reported an offense.** And

that isn't as much a factual issue as it goes to the understanding of sexual offenses and whose opinion to accept or not.

That … really drew me to the conclusion that **I'm going to accept the opinion of expert** [**Ms.**] **Manno, her history, training, experience**. I'm not downplaying … Dr. Maiden. … You know, his experience as outlined in his curriculum vitae shows he does have great experience.

However, as [Dr. Maiden] said, [he is] like [a] general practitioner. [He has] to cover a lot of areas. It's different with [Ms.] Manno. She's covered this area, treatment of sex offenders, understanding them, training regarding them, [and she has performed] … thousands of [SVP] evaluations. More where individuals were found not to be sexually violent predators than where they were. So again, I accept her opinion. **I believe** [**Ms. Manno**] **has much broader and specific knowledge regarding** … **sex offenses and a specific diagnosis**.

I also had a real hard time with the assertion[, by Dr. Maiden on direct examination,] that if someone has a disorder, … they would act out all the time. Even individuals with disorders, there are certainly those that can't control [urges] at all, period. But there are others that will look for opportunities and not take risks[.] …

So I had a real problem with well, because someone doesn't act out all the time, they wouldn't have this condition. I didn't accept that. I felt that the explanation of what is required for [an SVP] diagnosis was clear, and more acceptable from [Ms.] Manno.

….

So I find [Appellant] is an SVP, sexual violent predator. **I find that the Commonwealth has demonstrated that by clear and convincing evidence**.

*Id.* at 115-20 (emphasis added).

On July 22, 2021, the trial court sentenced Appellant to an aggregate 1 – 2 years of imprisonment, followed by 4 years of probation. The court also ordered Appellant to register as a sex offender for life, pursuant to

Pennsylvania's Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10—9799.42.[4]  Appellant timely appealed.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents eight issues for review:

1.) Did the lower court err in ruling that the Appellant's expert could testify about whether, under the DSM-5, the Appellant has unspecified paraphilic disorder – but could not testify about how the Appellant's age affected his likelihood of reoffending?

2.) Did the lower court err in ruling that only the Commonwealth's expert, who it questioned on the issue, could testify about how the Appellant's age affected his likelihood of reoffending?

3.) Did the lower court err in prohibiting the Appellant's expert from testifying about a particular study … of which he was aware that challenged the Commonwealth's expert's knowledge of recidivism rates in offenders over 60 and over 70 years of age?

4.) Did the lower court err in ruling that the Appellant's expert could not testify whether or not the Appellant was an SVP, that the Appellant's expert was not qualified to testify about most all SVP assessment factors recited at Title 42 Pa.C.S.A. § 9799.58(b)(1) through (b)(4),[5] and that he could not, in particular, testify about the assessment factor at Title 42 Pa.C.S.A. § 9799.58(b)(4)?

5.) Did the lower court err in assuming, and in concluding, that the Appellant may have re-offended from 1986 through

_____

[4] Appellant is subject to SORNA Revised Subchapter H, as he committed the offenses against A.A. after December 20, 2012.  **See Commonwealth v. Torsilieri**, 232 A.3d 567, 573-74 (Pa. 2020) (explaining amendments).

[5] Appellant cites SORNA Revised Subchapter **I**, despite being subject to Revised Subchapter **H**.  Regardless, the 15 statutory SVP factors apply to both subchapters.

November/December 2018 – even though no evidence to this effect was introduced – thereby improperly shifting the burden of proof from the Commonwealth to the Appellant and diluting the clear and convincing burden of proof required?

6.) Did the lower court err in concluding that the Appellant's expert's review of relevant statutes and cases demonstrated his lack of qualifications to testify about the assessment criteria at 42 Pa.C.S.A. § 9799.58 and about the Appellant's alleged SVP status?

7.) Did the lower court err in concluding that the Appellant's expert could not testify about the Appellant's likelihood of reoffense, about the assessment factor at 42 Pa.C.S.A. § 9799.58(b)(4), and about how the Appellant's age was relevant to his likelihood of re-offense – after the Commonwealth opened the door for the Appellant's expert testimony on those issues?

8.) Did the lower court err in questioning why the Appellant even wanted his expert to challenge the Commonwealth's expert's opinion on the recidivism rates of offenders past 70 years of age – because the rates of recidivism recited [by] the Commonwealth's expert were "very low"?

Appellant's Brief at 6-8 (footnote 5 added, some citations modified).

Though Appellant presents eight issues, he makes one argument, without subheadings or distinction. *See id.* at 11-32. Pursuant to Pa.R.A.P. 2119(a):

The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-- in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

*Id.* We overlook this defect, and like Appellant, address the issues together.

Each of Appellant's issues implicate the trial court's evidentiary rulings and its qualification of Dr. Maiden. We review these claims mindful of the following:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on training and experience.
>
> Expert testimony is permitted as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Conversely, expert testimony is not admissible where the issue involves a matter of common knowledge.

*Commonwealth v. Smith*, 206 A.3d 551, 560 (Pa. Super. 2019) (citations omitted). Further, evidence is only admissible if relevant, *i.e.*, where it has probative value with respect to a material fact. Pa.R.E. 402.

Pursuant to Pennsylvania Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. The burden of proof is on the proponent to establish the expert meets the criteria of Rule 702. ***Commonwealth v. Walker***, 92 A.3d 766, 790 (Pa. 2014).

Finally, expert testimony in a criminal proceeding implicating sex offenses is governed by 42 Pa.C.S.A. § 5920, which provides:

> **(b) Qualifications and use of experts**.—
>
> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.
>
> (2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

42 Pa.C.S.A. § 5920(b)(1)-(2).

Appellant argues the trial court erred regarding its limited qualification of Dr. Maiden. ***See*** Appellant's Brief at 10-33. Appellant claims:

> The lower court's rulings: 1) that Dr. Maiden was not qualified regarding sexual predator evaluations and the factors (***see*** 42 Pa.C.S. § 9799.58(b)(1) through (b)(4)) that go into them; 2) that Dr. Maiden was not qualified as an expert to say whether the Appellant is, or is not, a violent sexual predator; 3) that he was qualified only as an expert in the DSM-5 and about whether or not the Appellant has an unspecified paraphilic disorder; and 4) that

- 10 -

> Dr. Maiden was not qualified to testify about recidivism rates in elderly offenders and their application to the Appellant – effectively permitted Dr. Maiden to testify only about [the] SVP assessment factor [at] § 9799.58(b)(3)(iii) [("Characteristics of the individual, including … mental illness, mental disability or mental abnormality")], and no others. Most particularly, the lower court's rulings prohibited Dr. Maiden from testifying about any factor, such as age, (***see*** [***id.***] § 9799.58(b)(4)) that would be reasonably related to the risk of re-offense.

Appellant's Brief at 24-25. Appellant requests "remand[] to the lower court for the conduct of a new SVP hearing where the Appellant's expert is qualified to offer an opinion and report about all assessment criteria recited at [] 42 Pa.C.S.A. § 9799.58." ***Id.*** at 33.

> In response, the Commonwealth argues:

> Appellant's complaints that the trial court would not accept testimony about recidivism at older ages is misplaced. The trial court accepted it a[s] true but found [Appellant] did, in fact, reoffend in his late 60s, even if that fact is inconsistent with general statistics.

> * * *

> [D]espite finding [Dr. Maiden] an expert in some areas but not others, the court actually did consider Dr. Maiden's testimony, but it made it clear [that the court] found the opinion of Ms. Manno to be more accurate and her qualifications more significant. This determination was within the discretion of the court and was supported by the record.

Commonwealth Brief at 5, 8. Upon review, we conclude the record supports the Commonwealth's assessment.

SORNA requires a trial court to order a defendant convicted of a "sexually violent offense" to be assessed by the SOAB. 42 Pa.C.S.A. § 9799.24(a); ***see also id.*** § 9799.12 (defining sexually violent offense). The

- 11 -

SOAB is responsible for conducting an assessment to determine whether the individual should be classified as an SVP. *Id.* § 9799.24(b). The assessment involves 15 factors, set forth at 42 Pa.C.S.A. § 9799.24(b)(1)-(4). *See also Commonwealth v. Brooks*, 7 A.3d 852, 863 (Pa. Super. 2010) (all 15 factors need not be present to support an SVP designation).

Under SORNA, an SVP is an individual who has been convicted of one of the enumerated sex offenses, and "who is determined to be a[n SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. An act is considered "predatory" if it is "directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

After the SOAB completes its assessment, the trial court holds a hearing to "determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n SVP]." *Id.* § 9799.24(e)(3).

> The specific question for … any [] expert who testifies at an SVP hearing[] is whether the defendant satisfied the definition of sexually violent predator set out in the statute, that is, whether he or she suffers from "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses."

*Commonwealth v. Dixon*, 907 A.2d 533, 536 (Pa. Super. 2006) (citation omitted).

Here, Appellant sought to present Dr. Maiden as an expert with respect to whether Appellant was an SVP. N.T., 7/11/21, at 53. Dr. Maiden testified that he performed a psychological evaluation of Appellant, and reviewed Ms. Manno's SOAB report concerning Appellant. *Id.* at 59-60. Dr. Maiden responded in the affirmative to Trial Counsel asking: "[A]re you sufficiently qualified to evaluate Ms. Manno's conclusion about whether or not [Appellant] has a mental abnormality or personality disorder as set forth in the DSM?" *Id.* at 62. Trial counsel then sought to

> qualify Dr. Maiden as an expert in the … psychological evaluation of individuals, including individuals that have been convicted of sex crimes, and as an expert sufficient to evaluate the conclusions of Ms. Manno as set forth in her report …, **specifically the conclusion that** [**Appellant**] **has a mental abnormality or a disability, that specifically being unspecified paraphilic disorder** as set forth in the DSM-5.

*Id.* at 62-63 (emphasis added).

Dr. Maiden testified that he resides in New York State and has "not had any training regarding the Pennsylvania sexual assessment." *Id.* at 63; *see also id.* at 66 (stating he never performed an SVP assessment). Dr. Maiden testified he had some experience evaluating sex offenders in New York. *Id.* at 64-65; *see also id.* at 65 (Dr. Maiden testifying, "New York State has a different type of law. But I have made … evaluations in terms of [sex offenders'] likelihood of re-offending and their threat to society."). In further questioning by Trial Counsel, Dr. Maiden confirmed he had reviewed

> information including case law on Pennsylvania law that dealt with the definition of the terms mental disability and mental

- 13 -

abnormality, all for the purpose of permitting [Dr. Maiden] to assess [Appellant] and to evaluate the report of Ms. Manno[.]

*Id.* at 68.

The Commonwealth objected to the qualification of Dr. Maiden as an SVP expert, arguing:

[T]his is a very particular area that [Dr. Maiden] is not qualified to give an opinion on.  By his own admission, it sounds like he read some case law.  But we're talking about whether somebody has … experience, knowledge, [or] something above what other people have.  And he doesn't have any education or experience regarding this particular issue.

There may be other things that he could be qualified as an expert on and probably has.  But what he's being asked to give an expert opinion [on] here is beyond his area of expertise as has been presented.

*Id.* at 69.  Trial Counsel argued to the contrary.  *See id.* at 69-70.

The trial court then decided:

THE COURT:  Okay.  **This is going to be a split decision**.  … [**Dr. Maiden**] **has never** … **made an SVP determination**.  He indicated, … while we don't have Megan's Law in New York, [] I believe that we have similar things here, the tiers and things.  So he's not an expert, he's not qualified regarding sexual violent predator evaluations, the factors that go into them.  So **I'm not qualifying him in that area**.

**What I will qualify him in** … **as an expert is whether an individual, in particular** [**Appellant**], **has unspecified paraphilic disorder**.  That's part of the conclusion that [Ms.] Manno looked at[.]

And [**Dr. Maiden**] **is qualified as an expert in the DSM-5** … [**and**] **whether someone** [**does**] **or** … **does not have an unspecified paraphilic disorder**.  He is an expert in in that field.  He can render an opinion on that.  But he's not qualified as an expert to say [Appellant] is or isn't [a] sexual[ly] violent predator.

- 14 -

J-A18025-22

*Id.* at 70-71 (emphasis added).  We discern no error or abuse of discretion.

On direct examination, Trial Counsel asked Dr. Maiden whether Appellant met the criteria for "unspecified paraphilic disorder, as that term is defined in DSM-5[.]" *Id.* at 74.  Dr. Maiden responded:

> It's my opinion or belief that [**Appellant**] **does not meet that diagnosis**, and because he lacks certain really key symptoms that characterize such people.
>
> ….
>
> [W]e do not see the intensity or the irresistible urge symptoms in [Appellant].  I'm not in any way saying or supporting or anything that he did was normal or acceptable.  I'm just stating that it does not meet the diagnostic criteria of the DSM-5.

*Id.* at 74-75 (emphasis added).  Dr. Maiden agreed with Ms. Manno that unspecified paraphilic disorder is a "lifetime, chronic condition[.]" *Id.* at 80.  Unlike Ms. Manno, however, Dr. Maiden opined Appellant did not suffer from this condition and stated, "I do not believe that [Appellant] would have been able to function for 35 years … living a normal lifestyle and maintaining a marriage with all kinds of children … around him" without incident.  *Id.*;[6] *cf.*

_____

[6] Regarding Appellant's offenses involving A.A., Dr. Maiden emphasized on direct

> the fact that [A.A.] remained [working at Appellant's music store] for months afterwards, after those [inappropriate] encounters, and he did not approach her or attempt to do any kind of sexual act.  That would be almost impossible in my opinion as somebody that has that diagnosis[, *i.e.*, unspecified paraphilic disorder].

*Id.* at 76.

- 15 -

42 Pa.C.S.A. § 9799.12, *supra* (defining an SVP as an individual, convicted of one of the enumerated offenses, who has "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.").

Trial Counsel then asked Dr. Maiden whether he was "familiar with literature on recidivism rates for individuals in their late 50s, 60s, and 70s?" *Id.* at 81. The Commonwealth objected to this question as "beyond the scope of [Dr. Maiden's] expertise." *Id.* The trial court sustained the objection, agreeing it was "outside of [Dr. Maiden's] qualification as an expert." *Id.* at 82. Trial counsel noted his exception to the ruling. *Id.*

On cross-examination, the Commonwealth asked Dr. Maiden, "how do you know [Appellant] did not attempt to victimize young women" between his sex assaults in the 1980s and his assaults of A.A. *Id.* at 83. Dr. Maiden answered:

> Well, **we don't know that for 100 percent sure, right**? But we would know if criminal cases came up for people who filed charges or complained about [Appellant's] inappropriate approaches. And in today's world, I think that would occur.

*Id.* (emphasis added).

Regarding the DSM-5 definition for unspecified paraphilic disorder, the Commonwealth asked Dr. Maiden:

> Q. Do you agree with me that having five victims of a similar age in a similar inferior position would denote a preferential sexual interest in that group of characteristics?

- 16 -

A.     I don't think you could say that that is his preferential area of interest because [Appellant] states that he's been happily married and [has] a good sex life with his second wife.

*Id.* at 95.

Trial Counsel subsequently argued to the trial court:

[P]articularly since [Dr. Maiden has] been allowed to testify about the likelihood of re-offense, if he were not permitted to testify about studies with which he is familiar as to how [Appellant's] age after he is done with probation would impact upon the likelihood of reoffense, that seems terribly illogical to me.

*Id.* at 100.

The trial court responded:

I'm not changing my ruling.  There's already evidence in the record that it's 3.8 percent in your 60s[, *i.e.*, the statistical recidivism rate].  And then there's evidence that it goes down one point to 2.8 [percent].  So why you'd want to question [Dr. Maiden] anyway when that's already in the record and isn't in dispute, I'm not sure.

*Id.*

The Commonwealth questioned Ms. Manno on re-direct.  *See id.* at 102-05.  With respect to Dr. Maiden's testimony regarding Appellant's 35-year period of not re-offending, Ms. Manno testified, "to say [Appellant] would victimize anyone he had access to that was, let's say a postpubescent female, I think is a very inaccurate statement to make."  *Id.* at 103-04.  The Commonwealth asked, "does it say anything to you about [Appellant's] impulse control that he had been punished previously, yet did it again?"  *Id.* at 104.  Ms. Manno replied:

Yes. And … we have no idea about [Appellant's] urges or fantasies. All we know about is behavior. So we know that he engaged in this behavior again and recidivated because we're here today. That doesn't mean[] that there were urges and behaviors that he had that perhaps were controlled over time.

*Id.*

At the close of testimony, Trial Counsel moved for admission of Dr. Maiden's report. *Id.* at 105. The Commonwealth objected. *Id.* The trial court overruled the objection, explaining:

I am going to allow it in. It's up to [t]he [c]ourt to weigh the report and to distinguish the portions that were allowed to be presented, that [Dr. Maiden] was qualified as an expert for, and those that he wasn't. Of course, if he wasn't qualified as an expert in an area, and there's an opinion in his report regarding that, it will be disregarded by the [c]ourt because it's outside of the area that he was qualified as an expert in.

*Id.* at 105-06.

The trial court quoted Dr. Maiden's expert report, admitted as Exhibit 6, in further explaining:

The court did not accept the opinions and conclusions expressed by [Appellant's] purported expert, Dr. Robert Maiden, Ph.D. Dr. Maiden had little prior experience regarding sexually violent predator evaluations. Further, he utilized troubling factors in reaching his conclusions, such as: 1) since [Appellant's] victims were not minors[,] as they were not under the age of 12, the criteria to classify [Appellant] as a SVP have not been met. We reject this assertion. The significance of [Appellant's] pattern here, of using his position as a supervisor over young females to isolate and sexually assault them, is not lessened by the fact that none of them were less than 12 years old. The goal of [SORNA] is to require registration and notification to protect all juvenile females, not just those under the age of 12; 2) [Appellant] stopped pursuing the victim, A.A., after she "ignored him and became angry;" and, "if [Appellant] was a person who suffers from paraphilia because of the persistence and intensity of his

- 18 -

feeling, he would be unable to stop or control his behavior and would continue to pursue the Victim to engage in further and more intense sexual behavior with him." Ex. 6 at 7-8. We reject his assertion.

A.A., a 15-year-old, knew that something was wrong when a 66- or 67-year old individual was fondling her. Therefore, she cut off contact with him. At that point[, Appellant] recognized that, if he tried to maintain contact, it was likely A.A. would reach out for help and contact law enforcement. He knew there was no reason to contact A.A. because there was no chance of victimizing her again and it would only lead to being caught. In the past[, Appellant] moved on to other victims when the opportunity with one of them ended, and that pattern was repeated here; 3) "[Appellant] is a married man who is the father of four children whom he raised along with his wife. For over 35 years[, Appellant] maintained for all practical purposes a happy and normal marriage and family life." (Ex. 6 at 8). We reject this assertion. First, other than [Appellant's] self-serving statements to Dr. Maiden, there is nothing in the record to support these conclusions. Second, the assertion that [Appellant] has a good relationship with his family and wife supports the assertion that he is unable to control his desire to abuse juvenile females. With so much to risk, including harm to his spouse and family, he still acted on his urges, sexually assaulting yet another victim. His decision to act despite the consequences to himself and others demonstrates that he will likely act out again in the future – regardless of whether he has a good or bad family situation; 4) "It is well known the odds of recidivism are quite low for someone who is 69 years old who would be 71/72 once he is released into the parole system which would oversee him for another 6 years;" and "in fact, recent studies indicate that recidivism occurs at [a] rate of 2 percent for those over the age of 55 ...." (Ex. 6 at 8). [Appellant] was 66 or 67 when he sexually assaulted A.A. Therefore, by the statistics set forth by Dr. Maiden, [Appellant] already falls in that very rare group, the "less than 2% group, that re-offends after the age of 55." Since [Appellant] did re-offend at a mature age already, it is unreasonable to assume that, in a few years the urges that were not controlled when he was 66 or 67 will suddenly vanish.

Trial Court Opinion, 10/11/21, at 5-6 (citations modified).

After careful review, we adopt the trial court's analysis and conclusion, which is supported by the record and applicable law. We discern no abuse of the court's broad discretion in its rulings with respect to Dr. Maiden's expert qualification. **Smith**, **supra**. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/7/2022