J-S01018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTONIO GALES | |
| Appellant | No. 127 EDA 2015 |

Appeal from the Judgment of Sentence April 15, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005615-2007

BEFORE:  GANTMAN, P.J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                    **FILED JANUARY 25, 2016**

Appellant, Antonio Gales, appeals *nunc pro tunc* from the April 15, 2011 aggregate judgment of sentence of five to ten years' imprisonment, imposed after he was found guilty by a jury of unlawful contact with a child, aggravated indecent assault of a child, endangering the welfare of a child, indecent assault without complainant's consent, and corruption of minors.[1] Specifically, he challenges the determination by the trial court that he is a sexually violent predator (SVP) under Megan's Law, 42 Pa.C.S.A. §§ 9791-

_____

[1]  18 Pa.C.S.A. §§ 6318(a)(1), 3125(b), 4304(a), 3126(a)(1), and 6301(a)(1), respectively.

9799.9.[2]  After careful review, we affirm Appellant's convictions, and his SVP designation.  However, because of our *sua sponte* review of the legality of Appellant's sentence, we are constrained to vacate his sentence and remand for resentencing.

The trial court summarized the relevant facts and procedural history as follows.

> Complainant [E.W.], age 12 years, testified that she and her three siblings currently reside with their grandmother and grandfather, T[.L.] and J[.]L. In 2005, when in the third grade [E.W.] and her siblings lived at 5337 Lesher Street with her mother [(Mother)] and her mother's boyfriend, [A]ppellant[.] She stated that the bedroom she shared with her sister adjoined the room [M]other and Appellant shared, and that the rooms were connected with a door.  [E.W.] stated that one day while she was cleaning her bedroom Appellant called her into his room and instructed her to sit on the bed.  Appellant directed [E.W.] to pull her pants down and he inserted his finger and penis into the minor Complainant's vagina.  She also described an incident [] during which she was watching television in [M]other's bedroom when Appellant entered the room and instructed her to lie across the bed, pulled her pants and underwear down, pulled out his penis, and inserted his penis into her vagina.  [E.W.] stated that Appellant told her not to tell anyone of the incident and she complied because she was afraid and did not believe that [M]other would believe her.

_____

[2] On December 20, 2012, Megan's Law was replaced by Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10-9799.41.  As Appellant was sentenced on April 15, 2011, Megan's Law controls.

Appellant repeated this more than once a week during the year she was in the third grade. Complainant testified that on the final occasion of sexual abuse, Appellant called [E.W.] into his bedroom and instructed her to pull down her pants, pulled out his penis, and was going to insert his penis into her vagina when [M]other walked into the room. An altercation ensued between Appellant and [Mother] and [Mother] demanded that Appellant leave the house. Appellant gathered his belongings and complied.

Complainant finally reported Appellant['s] assaults the following year, [in January 2007] when in the fourth grade [E.W.] touched the penis of a classmate and she was questioned by school officials. Denise Klein was the elementary school counselor at [E.W.]'s school. Klein testified that she was advised of the incident and spoke to [E.W.] During the discussion [E.W.] reported that Appellant had inserted his penis into her vagina on multiple occasions and that [M]other knew about Appellant's behavior. Klein reported this information to the Philadelphia Department of Human Services and the police were called.

Philadelphia Police Detective Kimberly Stone of Special Victims Unit testified that on January 23, 2007 she was assigned to investigate the report of sexual abuse involving [E.W.] and a few days later she interviewed [E.W.] and recorded her statement. During the interview, [E.W.] communicated that Appellant inserted his penis into her vagina. Stone spoke with [E.W.]'s mother and grandmother and then reviewed the report from the DHS social worker and the school counselor. She and her partner, Detective Thomas, then prepared a formal Police Report of the incident.

[Mother] testified and explained that she met Appellant while he was working at [Mother]'s children[]s' day care, Brightside Academy, and they began dating. [Mother] and Appellant began living together in April, 200[5] and shortly thereafter

- 3 -

Appellant stopped working. [Mother] attended Job Corps at the time while Appellant stayed at home.

[Mother] testified that she and Appellant drank heavily. She stated that there came a time when she and Appellant were arguing and when he was drinking that she went to the store and upon her return she found Appellant and [E.W.] in her bedroom and observed Appellant holding his penis getting ready to penetrate [E.W.] sexually. [Mother] demanded that Appellant leave her home and he complied. [Mother] explained that she did not report the incident to police because Appellant had previously threatened that if she ever called police and accused him of anything he would have her physically assaulted. Notwithstanding having observed Appellant sexually assaulting [E.W.] [Mother] continued her relationship with him. [Mother] stated that she nevertheless had feelings for Appellant.

[T.L.] testified that she is [E.W.]'s grandmother, and that she has had custody of [Mother]'s children since April 2006. She explained that she reported her daughter to the Department of Human Services as a result of her daughter's chronic alcoholism and after finding that her daughter was neglecting her young children and putting them at risk. DHS later placed the children in [T.L.]'s home.

[T.L.] went on to testify that in January of 2007 she and her husband were called to [E.W.]'s school as a result of the incident involving [E.W.]'s inappropriately touching a fellow male student. When she arrived at the school she was informed of the incident with the student and later, after leaving the school she had a discussion with [Mother] during which her daughter told her that she walked into her bedroom and observed Appellant as he was preparing to mount [E.W.] with his pants and [E.W.]'s pants down. Later, while [E.W.] was in therapy as a result of these incidents, [T.L.] participated and spoke with [E.W.]

Appellant testified in [his own] defense. He stated that he met [Mother] at Brightside Academy, a child care facility in the northeast section of Philadelphia, where he was employed, and that they dated from October of 2004 until February of 2005 when they began living together until he moved out of the house in July 2005. Appellant testified that they had a good relationship until [Mother] began drinking heavily. He stated that he purchased the house in which they resided and that he paid the bills and provided financial support for [Mother]'s children.

Trial Court Opinion, 4/7/15, at 2-5 (citations omitted).

The trial court further set forth the subsequent procedural history.

On March 23, 2007[,] Appellant was arrested and charged with Unlawful Contact With a Child, Aggravated Indecent Assault of a Child, Endangering the Welfare of a Child, Corruption of Minors, and related offenses. On October 28, 2009, following a jury trial before [the trial court], the Honorable Thomas Dempsey presiding, [on October 28, 2009,] Appellant was found guilty of those crimes [and sentencing was deferred pending a Megan's Law Assessment.] [On April 15, 2011[, Appellant was found to be an SVP and] he was sentenced to concurrent terms of imprisonment of not less than five (5) years nor more than ten (10) years for Unlawful Contact and Aggravated Indecent Assault of a Child plus concurrent sentences of five (5) years['] probation for Endangering the Welfare of a Child and Corruption of a Minor. No direct appeal was taken from the [j]udgment of [s]entence.

On March 26, 2012[,] Appellant filed a Petition pursuant to the Post Conviction Relief Act [42 Pa.C.S.A. § 9541] (hereinafter, PCRA) *pro se* and PCRA counsel was appointed. PCRA counsel filed an [a]mended PCRA [p]etition on July 19, 2013 and on October 29, 2014 the Commonwealth filed an Answer to the PCRA Petition. On December 11, 2014[,] the PCRA [p]etition was granted by

- 5 -

agreement and Appellant's appeal rights were reinstated *nunc pro tunc*. This timely appeal followed on December 31, 2014.

*Id.* at 1-2 (footnote omitted).

On appeal, Appellant raises the following issue for our review.[3]

Whether the [trial] court erred in finding that the Commonwealth proved by [c]lear and convincing evidence that [Appellant] was properly classifiable as a "sexually violent predator" under 42 Pa.C.S. Section 9799.24(e)(b)[?]

Appellant's Brief at 5.

Appellant's sole issue raises a challenge to the sufficiency of the evidence to support the trial court's finding that he was an SVP. *Id.* at 11. "Because evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Johnson***, 107 A.3d 52, 66 (Pa. 2014) (italics added). As in all sufficiency reviews, we consider the evidence in the light most favorable to the Commonwealth, as the prevailing party in the trial court. ***Id.***

Under Megan's Law, an SVP is defined as "a person who has been convicted of a sexually violent offense […] and who is determined to be a sexually violent predator under section 9795.4 […] due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." ***Commonwealth v. Martz***, 926

---

[3] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

A.2d 514, 522 (Pa. Super. 2007), *appeal denied*, 940 A.2d 363 (Pa. 2008); ***see also generally*** 42 Pa.C.S.A. § 9792. When a person is convicted of one or more offenses set forth in section 9795.1, the trial court must order an SVP assessment by the Pennsylvania Sexual Offenders Assessment Board (SOAB), which is comprised, of "psychiatrists, psychologists and criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders." 42 Pa.C.S.A. § 9795.4; ***see also generally Commonwealth v. Dixon***, 907 A.2d 533, 535 (Pa. Super. 2006), *appeal denied*, 920 A.2d 830 (Pa. 2007). Once the assessment is ordered, an SOAB member is chosen to perform the assessment and determine whether the offender fits the definition of an SVP as defined by the statute. ***Dixon***, ***supra*** at 536.

The determination of whether an individual should be classified as an SVP is governed by examination of the following factors.

> (1)   Facts of the current offense, including:
>
> (i)   Whether the offense involved multiple victims.
>
> (ii)   Whether the individual exceeded the means necessary to achieve the offense.
>
> (iii)   The nature of the sexual contact with the victim.
>
> (iv)   Relationship of the individual to the victim.
>
> (v)   Age of the victim.

(vi)   Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii)   The mental capacity of the victim.

(2)   Prior offense history, including:

(i)   The individual's prior criminal record.

(ii)   Whether the individual completed any prior sentences.

(iii)   Whether the individual participated in available programs for sexual offenders.

(3)   Characteristics of the individual, including:

(i)   Age of the individual.

(ii)   Use of illegal drugs by the individual.

(iii)   Any mental illness, mental disability or mental abnormality.

(iv)   Behavioral characteristics that contribute to the individual's conduct.

(4)   Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).

Using the SOAB member's assessment and other evidence, the Commonwealth must prove to the trial court that the offender is an SVP by clear and convincing evidence. **Dixon**, **supra** (citation omitted).  The trial court makes the ultimate determination.  **Id.**  "The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing

as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue." **Commonwealth v. Meals**, 912 A.2d 213, 219 (Pa. 2006) (brackets in original, citation omitted, internal quotation marks omitted). Accordingly, in reviewing the trial court's SVP classification, "[w]e will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied." **Commonwealth v. Leddington**, 908 A.2d 328, 335 (Pa. Super. 2006), *appeal denied*, 940 A.2d 363 (Pa. 2007) (citation omitted). "Our task … is one of review, not one of reweighing or assessing the evidence in the first instance." **Commonwealth v. Prendes**, 97 A.3d 337, 356 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014) (citations omitted).

In the instant matter, Appellant was found guilty of, *inter alia*, indecent assault, a triggering offense for an SVP assessment under Megan's Law. **See generally** 42 Pa.C.S.A. § 9795.1. Appellant argues "the Commonwealth failed to produce clear and convincing evidence at the time of his assessment hearing" that he qualifies as an SVP. Appellant's Brief at 11. The focus of Appellant's argument is on whether the Commonwealth presented clear and convincing evidence that "the mental abnormality of pedophilia … last[ed] for a period of at least six months." **Id.** at 12. It is Appellant's assertion that the Commonwealth's expert witness was only able

- 9 -

to answer in general terms and could not provide the exact dates of the incidents. *Id.* at 12-13.

At the SVP hearing, the Commonwealth presented the testimony of Dr. Barry Zakireh, Ph.D., an expert in the field of psychology, and a member of the SOAB. N.T., 3/24/11, at 6-8. Appellant stipulated to Dr. Zakireh's qualification as an expert. *Id.* at 6. Upon our review of the record, we conclude that Dr. Zakireh's testimony presented clear and convincing evidence supporting Appellant's classification as an SVP.

Dr. Zakireh testified that he has been a member of the SOAB since 2000 and has conducted 1,200 to 1,300 SVP evaluations. N.T., 3/24/11, at 8-9. After evaluation of Appellant, Dr. Zakireh testified that "[i]n my opinion [Appellant] meets the criteria for a sexually violent predator." *Id.* at 9. Dr. Zakireh summarized his finding as follows.

> The law asks fundamentally where [sic] the person suffers from a mental abnormality or a personality disorder that makes them likely to engage in violent sexual behavior.
>
> And based on the review of the records related to [Appellant] and the offense in particular, also the available history of [Appellant], I came to the conclusion that he's diagnosed with pedophilia which is a disorder that involves long-term persistent sexual attraction or sexual arousal, sexual interest in prepubescent children.
>
> So it involves urges, sexual urges, sexual fantasies or behaviors or a situation of six months or more, and the individual has to be at least 16 years or older when they're diagnosed, and at least five

- 10 -

years or more older than the person whom they have a sexual relationship with or contact with.

Based on the records that are reviewed, [Appellant] has a - - his offense in this case involves **over a nine-month period having repeated and multiple sexual contact, varied and progressive sexual acts with a prepubescent female who was roughly about eight to nine years old at the time, and he obviously - - the nine-month period specified in the record goes beyond the six-month period as required by the diagnostic criteria**. [Appellant] was in his 40s, I believe, and so obviously there was a significant age difference.

He engaged in various sexual acts such as fondling, vaginal fondling, digital penetration, also attempted penile/vaginal penetration. He also exposed his penis to the victim. He acted on the sexual urges of fantasies which is another component of the diagnostic criteria. This was not confined to urges only or fantasies. He acted on these on a regular basis.

Based on the analysis of his behavior and as contained in the records and as required by the diagnostic criteria, he clearly meets the diagnostic criteria for pedophilia.

Pedophilia is a disorder that is significant and associated with not only the genitive etiology of sexual contact with children, but also puts the person at high risk for engaging in such contact in the future. So it involves both an element of etiology and also an element of persistence.

And as I stated, the law asks whether the person has a mental abnormality or a personality disorder.

In this case, I believe pedophilia is consistent with the conception of mental abnormality,[I] do not find a personality disorder, but a mental abnormality or a personality disorder. In this case pedophilia

- 11 -

> being a mental abnormality which is associated with placing the person at high risk or likelihood for engaging in criminal violent sexual acts.

*Id.* at 10-12 (emphasis added).

Dr. Zakireh also focused on Appellant's predatory behavior, noting Appellant "was a household member, was in a relationship with the victim's mother, … living with the victim, and that's when the offense occurred." *Id.* at 15. He noted that Appellant's "behavior is very consistent with the notion of predatory behavior because he initiated a sexual relationship and maintained that over a period of time with someone he has known[.]" *Id.* Further, Dr. Zakireh highlighted the "significant age and power difference between [Appellant] and the victim[,]" and its "potential for all the adverse affects [sic] [to] increase." *Id.* at 15-16. Finally, he noted that this was "an evolving pattern of sexual abuse … [and Appellant] did not cease his behavior until he was expelled from the house." *Id.* at 28. On cross-examination, defense counsel extensively reviewed the timeline with Dr. Zakireh, who maintained that the records show a repeated pattern of abuse over the course of the school year starting in September 2005, the year E.W. was in third grade. *Id.* at 37-43.

At the SVP hearing, Appellant also presented an expert, Dr. Timothy Foley, an expert in the field of psychology and in the field of assessment of sexual offenders, who concluded that Appellant did not meet the criteria of an SVP. N.T., 3/24/14, at 49-52. Specifically, Dr. Foley noted that he

"couldn't testify to a reasonable degree of psychological certainty that the six months [necessary for a pedophilia diagnosis] had been established." *Id.* at 51. While Dr. Foley conceded Appellant met the predator prong of the assessment, he found "insufficient information" to ascertain Appellant was "likely a perpetrator for future sexual offenses." *Id.* at 52. Accordingly, Appellant's expert, Dr. Foley, did not believe the evidence was sufficient to establish Appellant was an SVP by clear and convincing evidence.

Our review of the record reveals that the trial court's findings are supported, and we will not reweigh the evidence. *See Prendes*, *supra*. The trial court was free to credit the conclusions of the Commonwealth's expert and discount the contrary findings presented by Appellant's expert. *See Meals*, *supra* at 223-224. Therefore, we conclude that the evidence was sufficient to enable the trial court to determine that the Commonwealth established, by clear and convincing evidence that Appellant qualifies as an SVP. *See Leddington*, *supra*.

Notwithstanding our disposition of Appellant's issue on appeal, we are constrained to address a legality of sentencing issue *sua sponte*. "[A] challenge to the legality of the sentence can never be waived and may be raised by this Court *sua sponte."* *Commonwealth v. Wolfe*, 106 A.3d 800, 801 (Pa. Super. 2014), *appeal granted* 121 A.3d 433 (Pa. 2015). Instantly, as the Commonwealth concedes "[b]ecause [Appellant] committed aggravated indecent assault against a child less than thirteen years of age,

- 13 -

the lower court imposed a mandatory minimum sentence under 42 Pa. C.S. § 9718." Commonwealth's Brief at 12, n.4. In light of recent precedent interpreting the import of the United States Supreme Court's ruling in **Alleyne v. United States**, 133 S. Ct. 2151 (2013), we conclude the trial court imposed an illegal sentence. **See Wolfe**, **supra** at 805–806 (holding that the mandatory minimum sentencing provision of 42 Pa.C.S.A. 9718(a)(1) was unconstitutional even though the triggering fact was also an element of the offense for which Appellant was convicted), *appeal granted* 121 A.3d 433 (Pa. 2015).

Based on the foregoing, we conclude that the issue raised by Appellant lacks merit, but the trial court imposed an illegal sentence. Accordingly, the trial court's April 15, 2011 judgment of sentence is vacated, and the case is remanded for resentencing, without consideration of the mandatory minimum, in accordance with this memorandum.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2016

- 14 -