**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Todd MORGAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 7, 2011.

Filed March 24, 2011.

Allan L. Sodomsky, Reading, for appellant.

Kelly S. Kline, Assistant District Attorney, Reading, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., ALLEN, J. and McEWEN, P.J.E.

OPINION BY ALLEN, J.:

In this appeal, Todd Morgan ("Appellant") challenges his classification as a Sexually Violent Predator ("SVP") pursuant to the provisions of Megan's Law.[1] We affirm.

On June 23, 2010, Appellant entered a guilty plea to one count each of unauthorized administration of an intoxicant, criminal attempt to commit indecent assault, and sexual abuse of children.[2] That same day, the Honorable Paul M. Yatron, sitting as the trial court, conducted a hearing pursuant to Megan's Law. Judge Yatron ably summarized the following pertinent facts relative to Appellant's SVP status:

Appellant admitted that he placed a cloth soaked with chloroform over the face of an 11–12 year old child. His intention was to masturbate over her but she woke up before he could complete his fantasy. Appellant also admitted that over a span of several months, he placed a web camera in the victim's bedroom on four separate occasions. He filmed her naked, dressing and undressing while recording it onto his computer. [Appellant] was between 49 and 50 years old at the time.

An SVP hearing was conducted immediately after [Appellant's] guilty plea. The Commonwealth's expert, Dr. Veronique Valliere, assessed Appellant and concluded that he met the SVP criteria. In preparing the assessment and opinion, Dr. Valliere looked at the affidavits of probable cause from '09 and '07, child protective custody reports, crime scene photos, multiple criminal actions, and notes and letters from [Appellant]. In all, she viewed over a dozen reports and other sources of information to conduct her thorough assessment. [Appellant] refused to meet with Dr. Valliere during her evaluation, but her diagnoses were based on behavioral patterns not requiring an interview.

Dr. Valliere diagnosed Appellant with two sexual deviance disorders, pedophilia and paraphilia NOS to non-consent. Appellant's expert, Dr. [Frank] Dattilio, agreed with the paraphilia diagnosis, which required showing a pattern of sexual behavior extending over a six-month period. Dr. Valliere determined that Appellant engaged in sexual abuse of the child for more than six-months [sic], beginning with the placing of the camera and culminating in the [chloroform] incident of March '09. She noted that fantasies, urges or desires for sexual gratification from the child were present for more than six months and that Appellant's previous admissions reveal a longstanding arousal to unconscious victims. His behavior clearly indicated a preexisting fantasy. [Dr. Valliere] concluded that [Appellant] had patterns of deviant sexual arousals, which would predispose him to future motivation of this

---

1. 42 Pa.C.S.A. §§ 9791–9799.9.

2. 18 Pa.C.S.A. §§ 2714, 901(a) & 3126, and 6312(b), respectively.

crime. [Appellant's] behavior was predatory because clearly he had, at some point, maintained the relationship with the victim and her mother in order to promote [the victim's] sexual victimization. She noted the lengths that he went to in order to fulfill his fantasy, which included drilling a hole in the victim's bedroom wall, stringing a cable to his computer and hiding the camera. Furthermore, [Appellant] had been caught on several occasions but continued to put the camera back. His persistence, disregard for the risk and consequences of being caught and disregard for the distress of the victim clearly demonstrated behavior that was motivated by his arousal toward children. His continued behavior and motivation to reoffend speaks to the strength of his need to sexually abuse children. His arousal to unconscious victims further indicated a great deal of deviate sexual arousal and motivation.

When cross-examined, Dr. Valliere testified that someone can be a pedophile without ever having contact with a child. Such a diagnosis relies on the thoughts, fantasies and behaviors that involve the sexual arousal to prepubescent children. Appellant's behavioral history suggested a long standing deviant arousal pattern that predisposes him to recidivating. His age was not a factor because sexual deviance tends to develop early in life and is marked by ongoing fantasies, thoughts and urges. [Dr. Valliere] then stated that there were no specific tests that will tell you if someone is going to reoffend. The likelihood of reoffending changes depending on the context and the change can be sudden and dramatic. This Court agreed that the statutory analysis does not require an effort to predict whether the particular [offender] will reoffend. Dr. Valliere noted that there are no tests to show whether someone is a sexually violent predator; one can only look at statutory criteria. Appellant's expert agreed that there is no way to reach a black and white answer. He also agreed that Appellant's behavior clearly escalated. Further, he admitted that Appellant was addicted to masturbation and pornography, sought treatment for it but failed to complete it and that his behavior during the instant offense indicates an inability to control his impulses towards children.

This Court concluded that Appellant exhibited pedophilia and paraphilia and that the evidence clearly showed that his behavior was predatory and opportunistic. The age of the victim was significant, along with the repetitious nature of the conduct, the use of chloroform and the nature of the abnormalities described by both experts. Ultimately, the Court held that [the] Commonwealth satisfied its burden in showing that Appellant met the criteria to be characterized as a sexually violent predator.

Trial Court Opinion, 10/21/10, at 2–4 (citations omitted).

Following his designation as an SVP, Appellant was sentenced in accordance with his plea agreement to an aggregate term of eleven to twenty-three months of imprisonment, to be followed by a ten-year probationary term. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

A. Whether the trial court failed to follow current law and thereby erred in finding that the Commonwealth was not required to present clear and convincing evidence proving that Appellant was likely to recidivate in order to establish that

[Appellant] is a Sexually Violent Predator under Megan's Law?

Appellant's Brief at 4.

 Our standard of review is well settled:

The determination of a defendant's SVP status may only be made following an assessment by the [Sexual Offenders Assessment Board ("SOAB") ] and hearing before the trial court. In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. As with any sufficiency of the evidence claim, we view all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

The standard of proof governing the determination of SVP status, i.e., "clear and convincing evidence," has been described as an "intermediate" test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.

\* \* \*

The clear and convincing standard requires evidence that is "so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue."

*Commonwealth v. Fuentes,* 991 A.2d 935, 941–42 (Pa.Super.2010) *(en banc )* (citations omitted).

An SVP under Pennsylvania's version of Megan's Law is defined as follows:

A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792.[3]

Moreover:

The process of determining SVP status is statutorily-mandated and well-defined. The triggering event is a conviction of one or more offenses specified in 42 Pa.C.S.A. § 9795.1, which, in turn, prompts the trial court to order an SVP assessment by the SOAB. The Board's administrative officer assigns the matter to one of the Board's members, all of whom are "experts in the field of behavior and treatment of sexual offenders." 42 Pa.C.S.A. § 9799.3. At the core of the expert's assessment is a detailed list of factors, which are mandatory and are designed as criteria by which the likelihood of reoffense may be gauged.

*Fuentes,* 991 A.2d at 942 (citations omitted). According to the statute:

An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

---

3. Appellant does not dispute that he was convicted of a sexually violent offense.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).

This Court further summarized:

The precise line of inquiry for the Board's expert, as well as any other expert who testifies at an SVP hearing, is whether the defendant satisfied the definition of sexually violent predator set out in the statute, that is, whether he or she suffers from a mental abnormality or personality disorder that makes him or her more likely to engage in predatory sexually violent offenses. The salient inquiry to be made by the trial court is the identification of the *impetus* behind the commission of the

crime and extent to which the offender is likely to *reoffend.*

In this context, a "mental abnormality" is a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S.A. 9792. Moreover, "predatory" conduct, which is indispensable to the designation, is defined as an "act directed at a stranger or at a person with whom a relationship has been initiated, maintained or promoted, in whole or in part, in order to facilitate or support victimization." [42 Pa.C.S.A. § 9792].

*Fuentes,* 991 A.2d at 943.

■ In support of his claim on appeal, Appellant first asserts that "Pennsylvania Courts have found that the 'likelihood of re-offense' is an independent element of SVP classification." Appellant's Brief at 8. We disagree. In fact this specific claim has been rejected by this Court in both *Commonwealth v. Dixon,* 907 A.2d 533 (Pa.Super.2006), and *Commonwealth v. Geiter,* 929 A.2d 648 (Pa.Super.2007). As this Court stated in *Dixon:*

Our research has not revealed, and Appellant does not proffer, a single case in which this Court or our Supreme Court has set out the SVP standard in terms of three distinct elements. Typically, the cases recite the standard simply by tracking the statutory language, which provides that an individual is an SVP if he or she suffers from "a mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792.

\* \* \*

We agree with Appellant that every Commonwealth expert who testifies that an individual is an SVP must examine, and render an opinion on, whether the individual is likely to re-offend. *See* [*Commonwealth v. Krouse,* 799 A.2d 835 (Pa.Super.2002) (*en banc*)]. Contrary to Appellant's claims, the precise manner of meeting this burden is not analyzed in terms of a strict three-prong test. Nonetheless, the Commonwealth must prove by clear and convincing evidence that the statutory definition has been satisfied, and that definition certainly includes an inquiry into the likelihood of reoffense. 42 Pa.C.S.A. § 9792.

*Dixon,* 907 A.2d at 537, 539.

■ Appellant cites this Court's decision in *Commonwealth v. Merolla,* 909 A.2d 337 (Pa.Super.2006), to support his claim that "the Commonwealth did not provide clear and convincing evidence demonstrating that [he] was likely to reoffend because he suffered from a mental defect or personality disorder." Appellant's Brief at 11 (citing *Merolla,* 909 A.2d at 344). This argument is ill-advised. This Court in *Geiter, supra,* explained that our decision in *Merolla* may not be read to support the necessity of a third criterion for an SVP determination, *i.e.,* "an independent third assessment of the likelihood of reoffense." *Geiter,* 929 A.2d at 651. We further stated:

> [w]e find that *Merolla* does not cast doubt on this Court's holding in *Dixon.* Geiter has raised the identical claim which we disposed of in *Dixon* and our holding in *Dixon* controls the disposition here. Accordingly, we find that there is no merit in Geiter's claim that the approach used by the Board expert was inconsistent with the statutory guidelines set forth in Megan's Law.

*Geiter,* 929 A.2d at 652.

In *Commonwealth v. Meals,* 590 Pa. 110, 912 A.2d 213, 214 (2006), our Supreme Court addressed the "proper role of an appellate court in reviewing a sentencing court's classification of a criminal offender as a sexually violent predator[.]" In reversing this Court's determination that "many of the § 9794.4 factors weigh against SVP status in this case" the high court determined:

> To the extent the Superior Court panel majority approached its task by comparing and "weighing" Section 9795.4 factors not present here ... against those circumstances whose presence the trial court cited as supporting its SVP finding, the panel majority clearly erred. The error in the majority's "comparative" approach is not merely a function of the limitation inherent in appellate sufficiency review, which should have confined the court to an assessment of those factors which supported the SVP finding, but also a function of the panel's failure to appreciate the testimony below and the practical operation of the statute, as revealed by that testimony.

> \*　　\*　　\*

> The testimony in this case refutes the notion, accepted by both the panel majority below and by the *en banc* court in [*Commonwealth v. Krouse,* 799 A.2d 835 (Pa.Super.2002)], that the Section 9795.4(b) factors operate as a checklist where each factor weighs, in some absolute fashion, either for or against an SVP classification.... The Superior Court stepped beyond its authority when it reweighed the evidence, giving more weight to "absent" factors than to those found and relied upon by the trial court, and ignoring the Commonwealth's expert's explanation of the relevance of the absent factors. The task of the Superior Court is one of review, and not of weighing and assessing evidence in the first instance.

*Meals,* 912 A.2d at 220, 222–23 (footnote omitted). The Supreme Court further held that, "to the extent the decision in *Krouse* conflicts with the approach we outline in the case *sub judice,* this Court's approach controls and *Krouse* is disapproved." *Id.* at 223 n. 12.

Relying on *Meals,* the trial court in the instant case concluded that the Commonwealth provided sufficient evidence to support Appellant's SVP classification, including evidence of whether he was likely to reoffend. The trial court explained:

Contrary to Appellant's assertion, the record reflects that this Court required the Commonwealth to present the evidence mandated by the statute and current case law. Appellant argues that this Court should have required the Commonwealth to prove that he was likely to reoffend. Appellant misreads and misinterprets the statute and current case law. His argument is unfounded and mischaracterized and would require absolute proof that Appellant is likely to re-offend. [He] essentially want[s] the Commonwealth to predict the future. The current law requires the Commonwealth to demonstrate an increased likelihood of re-offense, but is not required to *prove* that re-offense will or will likely occur. This Court required a showing that [Appellant] is more likely than a general member of the population to reoffend. [*See Meals,* 912 A.2d at 223]. The Commonwealth had to show that Appellant had a mental disorder that made him more likely to engage in predatory sexually violent offenses.

Appellant imposes an impossible burden on the Commonwealth by requiring absolute proof that Appellant is likely to re-offend, contrary to current case law. One must examine factors supported in the assessment that relate to the risk of re-offense and also diagnose a person

with having a mental abnormality that makes them likely to engage in a predatory sexually violent offense. Dr. Valliere was not required to explicitly say that Appellant would reoffend in order to qualify him as an SVP. His mental abnormality and the exhibited predatory behavior predispose him to [the] future likelihood of victimization. The Pennsylvania Supreme Court in *Meals* held that the statute does not require a statistical analysis or test as to whether the particular defendant was likely to reoffend. The important question is whether or not the defendant suffers from a condition making him more likely to reoffend as opposed to a general member of the population. Under the language of the statute, [Dr. Valliere] had to examine factors related to the risk of reoffense when drawing her conclusions and show that Appellant suffered from a mental defect making him more likely to engage in predatory sexually violent offenses. Dr. Valliere was not performing a risk assessment. The goal of her examination was to determine a likelihood[,] but there was simply no way to test or determine if someone is going to actually reoffend. There are no tests to profile whether or not somebody meets the classification for sexually violent predator. The classification is determined by the statutory criteria. The Commonwealth does not have to *prove* that someone is likely to reoffend. It simply needs a showing that the person suffers from a condition that makes him likely to reoffend. One cannot predict what someone will do in the future. It is only possible to examine and assess factors that will increase their likelihood of reoffending. This Court required the Commonwealth to present the necessary evidence, according to the current laws.

Assuming, *arguendo,* that the Court did not require the Commonwealth to

present the evidence necessitated by current law, they did so, nevertheless. [The Commonwealth] presented sufficient evidence that Appellant will reoffend by showing that [he] suffers from a mental abnormality making him likely to engage in predatory behavior due to this abnormality. Dr. Valliere's testimony and report indicated that Appellant's combination of pedophilia and paraphilia-NOS to non-consent makes it difficult for him to control his sexually violent behavior. These incurable disorders would predispose him towards commission of criminal or violent sexual acts if given the opportunity. During testimony, [Dr. Valliere] stated that Appellant appeared to establish his relationship with the victim in order to create the opportunity for victimization, and his behavior during the instant offense is predatory, as defined in the statutes. Although his relationship with the victim's mother did not start off as a way to facilitate victimization, Dr. Valliere said that [Appellant] sought to maintain this relationship for the purpose of victimization. This is the very definition of predatory behavior as defined by the statute. The acts necessary to wire the [victim's] bedroom for the camera are also indicative of predatory behavior. Dr. Valliere thoroughly discussed the other § 9795.4 criteria as well. She addressed the likelihood of re-offense when she opined on Appellant's mental abnormality and the fact that there is no cure for it. [Contrary to Appellant's expert's testimony, Dr. Valliere opined that Appellant's] condition does not suddenly appear in someone of Appellant's age and had to be present for some period of time. Appellant continued his behavior of filming the victim even though he was caught several times and this affirms his inability [to] stop himself from reoffending. His behavior escalated from the non-contact filming to the much closer in-person contact of chloroforming the victim with the intention of sexually assaulting her. He was unable to suppress his desire or arousal even when caught. [Appellant's] drive to continue to reoffend spoke to his strong desire to sexually abuse a child. The Court specifically instructed counsel for both sides to address the issue of whether or not the second prong was satisfied by the evidence and they did so. Dr. Valliere's testimony is, in itself, evidence that Appellant is likely to recidivate and we found that she sufficiently addressed this likelihood.

Appellant was diagnosed with pedophilia and paraphilia, both of which are highly related to a risk of reoffending. Even with treatment, [Appellant] would not be less of a risk than the general population and this naturally makes him a greater risk to reoffend. [*Meals*, 912 A.2d at 223]. The Commonwealth, through Dr. Valliere, has shown that Appellant's diagnosis makes him likely to reoffend. Furthermore, his behavior in the instant case was predatory and his diagnosed mental abnormalities make him more likely to engage in predatory sexually violent offenses. Appellant chloroformed the victim, rendering her unconscious, for the sole purpose of sexually assaulting her. The expert's report and testimony support this Court's finding that Appellant was an SVP and her conclusions were rendered to a reasonable degree of professional certainty. Dr. Valliere cited to several factors that supported her opinions and her testimony itself is considered evidentiary. The Commonwealth has met its burden, satisfied both prongs and left the Court with no choice but to classify Appellant as an SVP. This Court did require the Commonwealth to present evidence of the likelihood of re-offense

as required under the current law. It did so clearly and convincingly. The Commonwealth was not required to prove that Appellant was likely to reoffend. This Court correctly ruled that Appellant is a sexually violent predator, based on the evidence presented by the Commonwealth.

Trial Court Opinion, 10/21/10, at 8–10.

Our review of the record readily supports the trial court's conclusions. Appellant essentially claims that he cannot be classified as an SVP without a personal risk assessment—a determination that is not statutorily required. In *Fuentes, supra,* this Court recently rejected this assertion that the likelihood to reoffend must be based upon "any actuarial instrument to predict risk." *Fuentes,* 991 A.2d at 944. Moreover, Appellant's attempt to factually distinguish *Meals,* as well as his assertion that *Meals* is "not particularly informative in the present matter," Appellant's Brief at 12, is not persuasive. *Meals* represents the Supreme Court's most recent discussion of the proper role of appellate review of a trial court's SVP classification. As noted above, the Supreme Court in *Meals* disapproved this Court's re-weighing of the Section 9795.4(b) factors in *Krouse, supra.* The same may be said of this Court's comparative weighing of Section 9795.4(b) factors in *Commonwealth v. Plucinski,* 868 A.2d 20, 27 (Pa.Super.2005), and *Commonwealth v. Bey,* 841 A.2d 562, 566 (Pa.Super.2004), decisions which relied upon *Krouse,* and which Appellant claims are "far more factually similar" to the facts in his case. Appellant's Brief at 12. Appellant claims that the presence of "far fewer of the statutory factors" in his case equals "a lower likelihood of re-offense." Appellant's Brief at 13. Clearly, such an argument runs afoul of our Supreme Court's discussion in *Meals.*

A reading of *Dixon, supra,* and *Geiter, supra,* in conjunction with *Meals,* readily establishes that the risk to reoffend is not an "independent element" of the SVP determination, but rather, is but one factor to be considered when making such an assessment. Reduced to its essence, Appellant's claim on appeal challenges the weight the trial court assigned to Dr. Valliere's testimony regarding the risk of reoffense vis-à-vis the testimony presented by Appellant's expert. Indeed, Appellant, relying upon his expert's testimony, asserts that "the clear and convincing evidence regarding one of the statutory factors which must be considered in deciding the SVP question—whether Appellant was likely to recidivate—very clearly *weighed* against a finding that [he] was an SVP." Appellant's Brief at 6 (emphasis added). Thus, Appellant's claim on appeal approximates a challenge to the weight afforded the Section 9795.4 factors, a challenge rejected by our Supreme Court in *Meals,* 912 A.2d at 224, and recently reaffirmed by this Court in *Fuentes, supra.*

In conclusion, our review of the record supports the trial court's determination that Appellant meets the statutory definition of a sexually violent predator. We therefore affirm the trial court.

Judgment of sentence affirmed.