J. S91013/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
MARTIN SCHWEIKERT, : No. 947 MDA 2016
:
Appellant :


Appeal from the Judgment of Sentence, May 23, 2016,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0003232-2015


BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J. AND STEVENS, P.J.E.*


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED FEBRUARY 14, 2017**

Martin Schweikert appeals from the judgment of sentence of May 23, 2016, following his conviction of one count each of involuntary deviate sexual intercourse ("IDSI")[1] and indecent assault.[2]  We affirm.

The trial court has summarized the procedural history of this matter as follows:

> [Appellant] was charged with Rape, four counts of [IDSI], four counts of Indecent Assault, two counts of Endangering Welfare of Children and two counts of Corruption of Minors, arising from incidents alleged to have occurred between January 7, 1995, and December 31, 200[5].  On October 13, 2015, Appellant entered a [negotiated]

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3123(a)(6).

[2] 18 Pa.C.S.A. § 3126(a)(7).

guilty plea to one count of [IDSI] and one count of Indecent Assault. Appellant was sentenced to serve not less than 4½ years nor more than 10 years in a State Correctional Facility followed by 5 years of probation. Additionally, this Court ordered that the State Sexual Offenders Assessment Board perform an assessment of the Appellant to determine whether he should be classified as a sexually violent predator [("SVP")]. A hearing was held on May 23, 2016, and, at that time, this Court found by clear and convincing evidence that the Appellant met the criteria to be classified as a[n] [SVP]. On June 1, 2016, Appellant filed a Motion for Reconsideration of this Court's determination and order of May 23, 2016. On June 6, 2016, this Court denied Appellant's Motion for Reconsideration.

On June 1[0], 2016, the Appellant applied for leave to appeal *in forma pauperis* and filed a Notice of Appeal to the Superior Court of Pennsylvania from this Court's order of May 23, 2016.[3] On June 16, 2016, this Court ordered the Appellant to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On June 23, 2016, the Appellant filed a Concise Statement of Errors Complained of on Appeal alleging that this Court erred in determining that the Appellant is a[n] [SVP].

Trial court opinion, 8/3/16 at 1-2 (footnotes omitted).

Appellant has raised the following issue for this court's review:

---

[3] We note that although appellant pled guilty and was sentenced on October 13, 2015, he waived his right to have an SVP assessment done prior to sentencing, and no order determining his SVP classification was entered at that time. An SVP hearing was held on May 23, 2016, and on May 27, 2016, the trial court entered its order classifying appellant as an SVP. Therefore, appellant's notice of appeal filed June 10, 2016, is timely. *See Commonwealth v. Schrader*, 141 A.3d 558, 561 (Pa.Super. 2016) ("We conclude that where a defendant pleads guilty and waives a pre-sentence SVP determination, the judgment of sentence is not final until that determination is rendered.").

Whether the trial court erred in concluding that Appellant should be classified as a[n] [SVP] where the Commonwealth presented no evidence that Appellant's pedophilic disorder caused a lack of volitional or emotional control associated with a mental abnormality defined by 42 Pa.C.S.A. § 9799.12; and where Appellant's age and ability to lead a law-abiding life over the past decade make Appellant unlikely to engage in future predatory sexually violent offenses[?]

Appellant's brief at 8.

Our standard of review is well settled:

The determination of a defendant's SVP status may only be made following an assessment by the [Sexual Offenders Assessment Board ("SOAB")] and hearing before the trial court. In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. As with any sufficiency of the evidence claim, we view all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

The standard of proof governing the determination of SVP status, *i.e.*, "clear and convincing evidence," has been described as an "intermediate" test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.

. . . .

- 3 -

> The clear and convincing standard requires evidence that is "so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue."

*Commonwealth v. Morgan*, 16 A.3d 1165, 1168 (Pa.Super. 2011), *appeal denied*, 38 A.3d 824 (Pa. 2012), quoting *Commonwealth v. Fuentes*, 991 A.2d 935, 941-942 (Pa.Super. 2010) (*en banc*), *appeal denied*, 12 A.3d 370 (Pa. 2010) (citations omitted).

> This Court has explained the SVP determination process as follows:

>> After a person has been convicted of an offense listed in [42 Pa.C.S.A. § 9799.14], the trial [court] then orders an assessment to be done by the [SOAB] to help determine if that person should be classified as a[n SVP. An SVP] is defined as a person who has been convicted of a sexually violent offense . . . and who [has] a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory . . . . Furthermore, in reaching a

- 4 -

> determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to reoffend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.
>
> *Commonwealth v. Stephens*, 74 A.3d 1034, 1038-1039 (Pa.Super. 2013) (internal quotation marks, ellipsis, and citations omitted).
>
> When performing an SVP assessment, a mental health professional must consider the following 15 factors: whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending. *See* 42 Pa.C.S.A. § 9799.24(b).

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189-190 (Pa.Super. 2015), *appeal denied*, 125 A.3d 1199 (Pa. 2015) (parentheses in original).

The Commonwealth's expert, Veronique N. Valliere, Psy.D., a member of the SOAB, performed her assessment on December 8, 2015. In her

report, Dr. Valliere concluded that appellant met the diagnostic criteria for pedophilic disorder, which is considered a congenital or acquired condition. (Commonwealth's Exhibit C-1 at 5.)[4]  Pedophilic disorder is considered a lifetime condition that can only be managed, not cured.  (*Id.*)  Dr. Valliere opined that pedophilic disorder is related to a future likelihood of re-offense. (*Id.*)  In addition, Dr. Valliere found that appellant's condition overrode his emotional or volitional control:  "In spite of knowing the potential consequences to himself and/or the victim, [appellant] repeatedly engaged in sexual behavior with a prepubescent child."  (*Id.*)  Dr. Valliere noted that appellant's offenses occurred with two different victims, multiple times for over a decade.  (*Id.*)  Appellant's deviant conduct included fondling, progressing to oral and anal sex.[5]  (*Id.* at 2.)

Regarding the statutory factors outlined above, Dr. Valliere found that appellant's offenses involved two victims, and while he did not abuse them at the same time, his offenses were repeated and occurred over a period of years.  (*Id.* at 3.)  The victims were prepubescent when the abuse began; one victim was 7 and the other was 10 years old.  (*Id.* at 4.)  The first victim, V.P., was appellant's stepson; the second victim, D.S., was his

---

[4] Neither the Commonwealth's nor appellant's expert testified at the SVP hearing.  The Commonwealth and the defense relied on the experts' reports and stipulated to their testimony.  (Notes of testimony, 5/23/16 at 5-6.)

[5] Appellant did not admit to anal sex as part of his guilty plea; however, it was charged in the criminal complaint and information.

biological son. (*Id.*) Appellant used his authority as a father figure to ensure the victims' compliance. (*Id.*) Appellant was 49 years old, indicating that his personality and sexual arousal pattern were well established. (*Id.*) Dr. Valliere found that his age was not protective regarding his risk of recidivism. (*Id.*) Appellant had no prior criminal record, and there was no evidence that drugs or alcohol played a role in appellant's offense behavior. (*Id.*)

Dr. Valliere concluded that appellant engaged in "predatory" behavior as that term is defined in the statute, *i.e.*, appellant had access to both victims through a familial relationship and used that relationship to facilitate their victimization. (*Id.* at 5-6.) In Dr. Valliere's expert opinion, appellant met the statutory criteria to be classified as an SVP. (*Id.* at 6.)

Appellant's expert, Timothy P. Foley, Ph.D., agreed with Dr. Valliere that appellant met the DSM-5[6] criteria for pedophilic disorder. (Defense Exhibit D-1 at 4.) Dr. Foley also agreed that appellant's offenses involved two prepubescent children, aged approximately 7 to 13 years during the commission of the offenses. (*Id.* at 5.) Dr. Foley acknowledged that appellant promoted a parental relationship with the victims, satisfying the

---

[6] Diagnostic and Statistical Manual of Mental Disorders, 5th Edition. "The DSM is a categorical classification system that divides mental disorders into types based on criteria sets with defining features. According to [both experts], the DSM is an authoritative compilation of information about mental disorders and represents the best consensus of the psychiatric profession on how to diagnose mental disorders." *Hollingshead*, 111 A.3d at 190 n.4 (citation omitted; internal quotation marks omitted; brackets in original).

predatory prong of the statute. (*Id.* at 7.) There were indications that appellant promoted a relationship with the victims for the primary purpose of sexual victimization. (*Id.* at 5.) However, Dr. Foley disagreed that appellant suffers from a mental abnormality making him likely to perpetrate sexually violent acts in the future or that appellant has current volitional deficits compromising his ability to control his sexual behavior. (*Id.* at 6.)

In reaching his conclusions, Dr. Foley relied on the "Static-99R," an actuarially-derived prediction tool intended to measure long-term risk potential for sexual offending. (*Id.* at 4.) According to Dr. Foley, the Static-99R is based on a meta-analysis of the records of more than 25,000 convicted sex offenders released to the community. (*Id.*) Factors in appellant's favor vis-à-vis his risk of re-offense included that the victims were not strangers or unrelated to appellant; there were no indications he did more than what was necessary to commit the offenses; there were no reports of gratuitous cruelty or violence; other than their ages, neither victim suffered from a cognitive deficit that increased his vulnerability to abuse; appellant's age of 49 years and the likelihood that he will be confined or supervised for many years; appellant's lack of a prior criminal record; and the fact that appellant had no documented victims for more than 10 years, after he last abused the second victim in this case. (*Id.* at 5-6.) Dr. Foley concluded that using the Static-99R risk assessment tool, appellant is categorized with offenders who recidivate with low frequency. (*Id.* at 7.)

Dr. Foley determined that appellant did not meet the statutory criteria for categorization as an SVP. (*Id.*)

After considering both experts' reports, as well as the arguments of counsel and appellant's own testimony, the trial court found clear and convincing evidence that appellant satisfied the statutory criteria for SVP status:

> The Court considered the reports of both experts, with all due respect to Dr. Foley, who did not have the benefit of an interview.[7] The Court is extremely concerned by several statements that [appellant] made specifically when asked questions about the sexual abuse of V.P. he stated he felt bad and wanted to stop but he was unable to and it continued. He had no regrets. The second comment that the Court is extremely troubled by is the comment in response to questioning, about the oral sex that occurred was [appellant]'s statement it wasn't anything serious it was stupid.[8] With respect to his responses to the Assistant District Attorney's questioning with respect to D.S. the Court finds it troubling that this many years later [appellant] continues to justify his horrific acts towards D.S. by saying that D.S.'s mother indicated

---

[7] Appellant declined to participate in the interview process; therefore, neither expert interviewed appellant.

[8]

Q[.] Would I also be correct that your sexual abuse of V.P. was escalating; in other words, in the beginning of your sexual abuse of V.P. it started with fondling of V.P. and eventually escalated at least to what you admitted at the guilty plea to you penetrating his mouth with your penis?

A[.] I suppose but that happened like once and it wasn't like anything serious. It was stupid.

Notes of testimony, 5/23/16 at 14.

that D.S. wasn't developing right and therefore that was the reason for the sexual abuse.

Notes of testimony, 5/23/16 at 24.

Appellant does not dispute the diagnosis of pedophilic disorder, but argues that the Commonwealth failed to prove it affects his emotional or volitional capacity as required by 42 Pa.C.S.A. § 9799.12. (Appellant's brief at 19.) Appellant also argues that the trial court misconstrued his testimony. (*Id.* at 20-21.) Appellant emphasizes that there were no further reports of child sexual abuse after 2005, despite the fact that he was around children during this time. (*Id.* at 21.)

In concluding that appellant's mental abnormality, *i.e.*, pedophilic disorder, compromised his emotional and volitional control, Dr. Valliere stated, "In spite of knowing the potential consequences to himself and/or the victim, [appellant] repeatedly engaged in sexual behavior with a prepubescent child. His deviant arousal pattern motivated his sexual offense to a second victim for a period of offending that spanned over a decade." (Commonwealth's Exhibit C-1 at 5.) The trial court, as fact-finder, was free to accept Dr. Valliere's opinion in this regard. In fact, the allegations were that appellant did not stop molesting his first victim, V.P., until V.P. threatened to stab him. (*Id.* at 2.) V.P. was approximately 13 years old at that time. (*Id.*) Appellant then turned to his biological son, D.S., who was 10 years old. (*Id.*)

At the SVP hearing, appellant denied that V.P. ever threatened to stab him, but did admit having difficulties controlling his sexual urges:

> Q[.] No, sir. Were there ever times during the period of time when you sexually abused V.P. that you felt bad about it and wanted to stop?
>
> A[.] Oh, yes, yes, yeah. I can concretely answer that question, yes, there was [sic].
>
> Q[.] Despite occasions when you would feel bad about it and wanted to stop were there occasions where you would nevertheless continue to sexually abuse V.P.?
>
> A[.] Yeah. But it was one thing on my mind and not any -- I wasn't feeling any regret at the moment. I was either usually under the influence of marijuana or possibly alcohol or both and kind of I don't know kind of out of it for that.
>
> Q[.] Would it be fair to say that despite your best intentions to not want to sexually abuse V.P. you continued to abuse V.P.?
>
> A[.] I guess the feeling of regret did pass away after a period of time. I don't know what increment [sic] I was feeling at the time.

Notes of testimony, 5/23/16 at 13-14.

Therefore, the testimony supports the trial court's finding that appellant was unable to control his deviant sexual impulses. At least sometimes, he knew what he was doing was wrong and wanted to stop, but could not resist his pedophilic urges. Regarding appellant's argument that there were no reported incidents after 2005, appellant testified that he was around other children over the last 10 years, including friends of D.S. and

the 8- or 9-year-old son of one of his girlfriends. (**Id.** at 18-19.) However, appellant testified that he was never alone with any of these other children. (**Id.** at 18-20.) Therefore, he never would have had the opportunity to abuse them.

Appellant also argues that the Commonwealth failed to prove he is likely to commit future predatory sexually violent offenses. Appellant relies on Dr. Foley's report, including his use of the Static-99R assessment tool. Appellant cites several factors related to the risk of re-offense, including his age, the fact that he did not exceed the means necessary to commit the offenses or display unusual cruelty during the crimes, and that commission of the crimes did not involve alcohol or drug use.[9] (Appellant's brief at 28-29.) Appellant claims that the trial court took his statement that forcing V.P. to perform oral sex "wasn't like anything serious" out of context, and that he fully appreciated the seriousness of the offenses. (**Id.** at 27.) Appellant also argues that Dr. Valliere never explicitly stated that appellant is likely to re-offend. (**Id.** at 25.)

Dr. Valliere considered the factors relied upon by appellant, including his age, but concluded that, "His age is not protective regarding recidivism risk." (Commonwealth's Exhibit C-1 at 4.) Dr. Valliere acknowledged that "There is nothing in the offense information to indicate that the offender is

---

[9] In fact, as stated above, appellant testified that he was frequently high or drinking alcohol when he sexually abused V.P. (Notes of testimony, 5/23/16 at 13.)

aroused to cruelty or the pain, humiliation, or terror of the victim." (*Id.*) Dr. Valliere found that appellant has a disorder, pedophilia, "related to a future likelihood of re-offense." (*Id.* at 5.) Dr. Valliere also noted that pedophilic disorder cannot be cured and that "[appellant] always has the potential to become sexually aroused to children." (*Id.*) Furthermore, "the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element." *Stephens*, 74 A.3d at 1039 (citation omitted). *See also Morgan*, 16 A.3d at 1171 ("Dr. Valliere was not required to explicitly say that Appellant would reoffend in order to qualify him as an SVP. His mental abnormality and the exhibited predatory behavior predispose him to [the] future likelihood of victimization." (quoting with approval from the trial court opinion, 10/21/10 at 8-10)).

The trial court did not take appellant's statements out of context, as appellant suggests. To the contrary, when questioned on cross-examination regarding forcing his penis into V.P.'s mouth, appellant responded, "I suppose but that happened like once and it wasn't like anything serious. It was stupid." (Notes of testimony, 5/23/16 at 14.) In addition, the testimony does not reflect that appellant appreciated the seriousness of the offenses and their impact on the victims. Appellant bemoaned the fact that "I've lost everything, everything, everything, friends, family, money, possessions." (*Id.* at 11.) Appellant complained that an SVP designation "would just complicate things immensely." (*Id.*) Appellant testified that any

feeling of regret "did pass away after a period of time." (*Id.* at 14.) Appellant also claimed that after he and V.P.'s mother broke up, V.P. came to live with him willingly. (*Id.*) With respect to his abuse of D.S., appellant seemed to blame D.S.'s mother. (*Id.* at 14-16.) So, the record does not support appellant's argument that he understood the serious nature of the offenses and their devastating impact on the victims.

Appellant relies on Dr. Foley's report and his use of the Static-99R actuarial-assessment tool. However, as this court remarked in *Hollingshead*, in which the defendant had also retained Dr. Foley as her expert:

> Appellant argues that Dr. Foley's testimony proves that she is not an SVP. We, as an appellate court, are required to view the evidence in the light most favorable to the Commonwealth when reviewing the sufficiency of the evidence for an SVP determination. The trial court made a credibility determination and chose to believe Ms. Scheuneman over Dr. Foley. We may not disturb that credibility determination.

*Hollingshead*, 111 A.3d at 194. *See also Morgan*, 16 A.3d at 1173 ("this Court recently rejected this assertion that the likelihood to reoffend must be based upon 'any actuarial instrument to predict risk.'"), quoting *Fuentes*, 991 A.2d at 944.

The trial court carefully weighed all of the statutorily-mandated factors and concluded that the evidence proved, by clear and convincing evidence, that appellant is an SVP. We discern no error of law or abuse of discretion in

this determination. Accordingly, we affirm the order of the trial court classifying appellant an SVP.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2017