J-S39033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.                :
:
:
LANCE EDMOND BROWN        :
:
Appellant       :   No. 606 MDA 2022

Appeal from the Judgment of Sentence Entered December 30, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001315-2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:      **FILED: FEBRUARY 23, 2023**

Appellant Lance Edmond Brown appeals from the judgment of sentence imposed after he pled guilty to aggravated indecent assault and related offenses. Appellant argues that the trial court erred in determining that he was a sexually violent predator (SVP). We affirm.

Briefly, Appellant was arrested and charged with multiple offenses based on allegations that he sexually abused his minor stepdaughter multiple times over a two-year period. The trial court summarized the subsequent procedural history of this matter as follows:

> On February 25, 2021, [Appellant] pled guilty to aggravated indecent assault, unlawful contact with a minor, two (2) counts of indecent assault, and corruption of minors.[1] On March 15, 2021, we issued an order directing [Appellant] to be assessed by the Pennsylvania Sexual Offender Assessment Board (SOAB) to

---

[1] 18 Pa.C.S. §§ 3125(a)(8), 6318(a)(1), 3126(a)(7), (a)(8), and 6301(a)(1)(ii), respectively.

determine if he met the criteria for classification as [an SVP]. On December 30, 2021, we sentenced [Appellant], pursuant to a negotiated plea agreement, to a term of incarceration of not less than two and one-half (2 1/2) nor more than five (5) years in a state correctional institution with ten (10) years of consecutive probation.

On February 11, 2022, an SVP hearing was held at which the Commonwealth presented the expert testimony of Dr. Robert Stein, and [Appellant] presented the expert testimony of Dr. Christopher Lorah. At the conclusion of the hearing, we took the matter under advisement.

\* \* \*

On March 24, 2022, we issued an order finding that the Commonwealth had established, by clear and convincing evidence, that [Appellant] is an SVP.

Trial Ct. Op., 4/27/22, at 1-2 (some formatting altered).

Appellant filed a post-sentence motion which the trial court denied. Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issue for review:

Whether the trial court erred in finding [that Appellant was an SVP] where the Commonwealth failed to prove by clear and convincing evidence that [Appellant] is a sexually violent predator when the Commonwealth's expert failed to articulate the likelihood of [Appellant] to reoffend and instead relied upon the utility of SVP status for community safety?

Appellant's Brief at 6.

In his sole claim, Appellant challenges the sufficiency of the evidence supporting his SVP designation. Initially, Appellant acknowledges that Dr.

Stein testified that Appellant suffers from a mental abnormality and that he engaged in predatory behavior. *Id.* at 22-24. However, Appellant argues that "Dr. Stein's opinion failed to provide evidence that, based on this conduct and the predatory conduct within this case, there was a likelihood that [Appellant] would reoffend." *Id.* at 25-26. Further, Appellant argues that although Dr. Stein analyzed the statutory factors, "his testimony failed to show how, taken together, there is a likelihood to reoffend other than in this instance, there was sustained sexual deviance." *Id.* at 26. Therefore, Appellant asserts that because "the evidence failed to show that the mental abnormality would lead to a higher likelihood that he would reoffend," the trial court erred in designating him as an SVP. Finally, to the extent Appellant's interpretation of the SVP statute is inconsistent with this Court's precedent, Appellant requests that we revisit our prior decisions and adopt the three-part SVP test rejected by this Court in ***Commonwealth v. Dixon***, 907 A.2d 533 (Pa. Super. 2006).

In reviewing Appellant's sufficiency claim, our standard of review is as follows:

> The determination of a defendant's SVP status may only be made following an assessment by the [SOAB] . . . and hearing before the trial court. In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. As with any sufficiency of the evidence claim, we view all the evidence and [the] reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the

Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

The standard of proof governing the determination of SVP status, *i.e.*, "clear and convincing evidence," has been described as an "intermediate" test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.

The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Commonwealth v. Morgan*, 16 A.3d 1165, 1168 (Pa. Super. 2011) (citation omitted and formatting altered). In reviewing an SVP determination, this Court may not re-weigh the factors relied on by the fact-finder. *Id.* at 1173.

This Court has explained the SVP determination process as follows:

After a person has been convicted of an offense listed in 42 Pa.C.S. § 9799.14, the trial court then orders an assessment to be done by the SOAB to help determine if that person should be classified as an SVP. An SVP is defined as a person who has been convicted of a sexually violent offense and who has a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to reoffend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of reoffending is but one factor to be considered when making an assessment; it is not an independent element.

- 4 -

> When performing an SVP assessment, a mental health professional must consider the following 15 factors: whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending. **See** 42 Pa.C.S. § 9799.24(b).

**Commonwealth v. Hollingshead**, 111 A.3d 186, 189-90 (Pa. Super. 2015) (some citations omitted and formatting altered).

This Court has held that although the SVP statute requires "an inquiry into the likelihood of reoffense," it does not require an "assessment of the likelihood of reoffense," or a "personal risk assessment." **Morgan**, 16 A.3d at 1170, 1173 (quoting **Dixon**, 907 A.2d at 539 and **Commonwealth v. Geiter**, 929 A.2d 648, 651 (Pa. Super. 2007)). Further, the risk of reoffense is not "an 'independent element' of the SVP determination, but rather, is but one factor to be considered when making such an assessment." **Morgan**, 16 A.3d at 1173; **see also Dixon**, 907 A.2d at 539 (stating that although experts must offer an opinion as to whether an individual is likely to re-offend, "the precise manner of meeting this burden is not analyzed in terms of a strict, three-prong test").

Here, the trial court concluded that there was sufficient evidence to support Appellant's designation as an SVP. *See* Trial Ct. Op. at 18. In reaching that conclusion, the trial court explained:

> In this case, an SVP assessment was conducted by a member of the SOAB, Dr. Robert Stein, pursuant to [Section] 9799.24(b). Dr. Stein examined the factors enumerated in that sub-section relevant to the issues of mental abnormality and predatory behavior.
>
> *        *        *
>
> Dr. Stein has been a member of the SOAB since 1998 and has conducted over 2,000 SVP assessments. He estimated that eighty percent (80%) of those assessments result in his determination that the individual does not meet the SVP requirements. In this case, he reviewed all the appropriate materials to conduct his assessment, including the report from the SOAB investigator, the criminal complaint and probable cause affidavit, Pennsylvania State Police reports, ChildLine reports, Dauphin County Children and Youth reports, and Dauphin County Prison reports. Based upon his experience, preparation, and demonstration of competence and expertise during his testimony, we find him to be a credible witness.
>
> Dr. Stein diagnosed [Appellant] with an "other, specified paraphilic disorder with a specification of non-consent, a pattern of non-consenting sexual behavior. Non-consenting because of the young age of the child and this was not in any way a consensual or dating type relationship. This was a predatory relationship." He explained that "paraphilia" is anything that deviates from the sexual norm, even where the behavior is legal or consensual.
>
> However, when a "paraphilic behavior pattern victimizes another person, now it rises to the level of a paraphilic disorder." When that victimization occurs for six (6) months or more, a diagnosis of paraphilic disorder is appropriate. Such a disorder constitutes a "mental abnormality."
>
> Having determined that [Appellant] suffered from a "mental abnormality," Dr. Stein next addressed the question of whether [Appellant] had engaged in "predatory behavior." He opined that

[Appellant] "did [display predatory behavior] through multiple acts of sexual touching. There was the establishment and the maintenance and promotion of a sexually victimizing relationship."

The victim was [Appellant's] stepdaughter, and their relationship likely was initially established pursuant to this dynamic. However, the fact that a familial relationship existed does not preclude a finding of predatory behavior because the statute defines "predatory" as a relationship formed, in whole or in part, to facilitate victimization. 42 Pa.C.S. § 9799.12.

At this point, we pause in our analysis of Dr. Stein's assessment, to briefly mention aspects of the testimony of [Appellant's] expert, Dr. Christopher Lorah, a forensic psychologist who assesses and treats sexual offenders. We note that Dr. Lorah also believes [Appellant] suffers from a paraphilic disorder. Dr. Lorah also agrees with Dr. Stein that [Appellant] engaged in predatory behavior. In reaching his conclusions that [Appellant] suffers from a mental abnormality, engaged in predatory behavior, and satisfies the criteria for an SVP, Dr. Stein examined the statutorily prescribed factors in § 9799.24(b). He found the following relevant to the formation of his opinions:

(a)   § 9799.24(b)(1)(iii) - The nature of the sexual contact with the victim. The nature of the contact was physical touching, which is consistent with sexual deviance.

(b)   § 9799.24(b)(1)(iv) - Relationship of the individual to the victim. A sexual relationship between a stepfather and stepdaughter is outside of normal sexual behavior and consistent with sexual deviance.

(c)   § 9799.24(b)(1)(v) - Age of the victim. The victim's age, between twelve (12) and fourteen (14), "is a significant factor in this case", in that targeting a child of that age is consistent with sexual deviance. Since there was no evidence as to whether the victim was pre-pubescent or post-pubescent, Dr. Stein declined to diagnose [Appellant] with pedophilia. However, the absence of that diagnosis does not negate the sexual deviance of taking advantage of such a young child.

(d)   § 9799.24(b)(1)(vii) - The mental capacity of the victim. The mental capacity of the victim was relevant to Dr. Stein because some of the offenses occurred

- 7 -

while the victim was asleep. Taking advantage of someone without the capacity to defend herself is consistent with predatory behavior.

(e) § 9799.24(b)(3)(i) - Age of [Appellant]. [Appellant] was a thirty-seven (37) year old mature adult, approximately twenty-five (25) years older than the victim. Dr. Stein stated that "such a substantial [age difference] is consistent with sexual deviance", and pointed out that, while still perhaps demonstrative of sexual deviance, the same offenses committed by an eighteen (18) year old upon a twelve (12) year old would be viewed differently.

(f) § 9799.24(b)(3)(iv) - Behavioral characteristics that contribute to the individual's conduct. The overall pattern is consistent with sustained sexual deviance, sustained being defined as a period of six months or more, somewhat arbitrary but that's the way it's generally defined; and the paraphilic disorder, which is a sexually deviant interest in targeting a 12-year-old girl and acting on that interest by the demise of a person through contact offending.

Trial Ct. Op. at 9-13 (record citations omitted, some formatting altered).

Following our review of the record, and viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that there was sufficient evidence supporting Appellant's classification as an SVP. **See Morgan**, 16 A.3d at 1168.

As noted by the trial court, Dr. Stein considered each of the statutory factors, including those that were "reasonably related to the risk of reoffense." **See Hollingshead**, 111 A.3d at 189-90. At the SVP hearing, Dr. Stein testified that Appellant suffered from a paraphilic disorder which "overrode [Appellant's] emotional and volitional control" during the two-to-three-year period in which Appellant sexually abused his minor stepdaughter. N.T. SVP

Hr'g, 2/11/22, at 40. Dr. Stein also found that Appellant's conduct was predatory in nature. *Id.* at 12, 16-18. Dr. Stein discussed several factors related to Appellant's risk of reoffense, including Appellant's age, diagnosis, lack of control over his impulses, and potential for rehabilitation. *Id.* at 20-26. Ultimately, Dr. Stein concluded that Appellant "meets the criteria for [an SVP]." *Id.* at 18.

Although Dr. Stein did not state that there was "high likelihood" that Appellant would reoffend, such a finding is not required for an SVP designation. *See Morgan*, 16 A.3d at 1170, 1173. Further, to the extent Appellant asks us to revisit our precedent and "require an independent assessment of likelihood to reoffend" in the SVP context, we have no basis to do so. *See Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006) (stating that "[i]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court" (citation omitted)). Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/23/2023

- 9 -